Burgess, J.
An action for damages for personal injuries sustained by plaintiff while in the service of defendant as a moulder' hand in defendant’s planing mill. Plaintiff recovered a judgment for the sum of $5,000 from which defendant appealed.
While no objection was made to the petition before or at the trial, or by motion in arrest, numerous objections as to its sufficiency are made for the first time in this court. It will, therefore, be set out in full. Omitting the formal parts it is as follows:
“Plaintiff states that defendant is and was at the time hereinafter stated a corporation organized and doing business under and by virtue of the laws of the state of Missouri.
“Plaintiff states that about the month of July, 1891, and for a long time prior thereto, he was employed by defendant as a cutter in its planing mill and engaged in the operation of a moulding machine upon which it was his duty to prepare lumber; that in close proximity to his machine and his post of duty was situated a rip-sawing machine which had a movable table thereon supplied with adjustable screws used for the purpose of raising and lowering the same as required by different classes of work; that it also had a gauge thereon which was properly regulated by set screws; that the said saw was propelled by steam power by means of a belt and pulley which were connected with *597 a shaft; that about the middle of said July, 1891, while plaintiff was so engaged at his machine and in the line of his duty, he was, owing to the negligence and carelessness of the said defendant, struck on the chest by a piece of lumber which was thrown upon him with great force from the said circular rip-sawing machine and inflicted upon him painful internal injuries and disabled him from the performance of his usual labor; that he has, by reason of said injuries, been compelled to incur large expense for medicines and medical attendance and has been since that time suffering great pain of body and mind in consequence; that plaintiff has been unable to perform any work and has been permanently disabled from the performance of his usual vocation.
“Plaintiff further states that the said circular rip-sawing machine causing said injury as aforesaid was by the negligence of defendant permitted to become out of repair and was not reasonably safe for its uses, in this, that the gauge and the set screws thereon were out of repair, and defective, that the adjustable screws used for the purpose of raising and lowering the same were unfit for use, out of repair, and defective, all of which was unknown to plaintiff at the time, but which defendant well knew, or by exercise of ordinary care on its part might have known, and plaintiff states that he was injured as the direct cause of defendant’s negligence in any or all the particulars aforesaid.
“Plaintiff further states that a circular rip-sawing machine is a dangerous machine and that it requires experience and skill in the operator to operate the same with safety to others, but that at the time of the infliction of the injury as aforesaid the said rip-sawing machine was operated by one Osburg, in defendant’s employment in the line-of his duty; that said Osburg was permitted through defendant’s negligence to oper *598 ate the said machine; that he was incompetent for the performance of the labor he was doing and was simply a bench carpenter which defendant well knew, or by the exercise of ordinary care might have known, but which fact was unknown to plaintiff at the time; that the said Osburg was negligent in the operation of said machine at the time, in this, that he failed to raise the table thereof by the adjustable screws as was necessary for the work he was doing; that he failed to use a notched shove stick as necessary for that class of work; that he failed to adjust the set screws on the gauge thereof, and that the incompetency and negligence of said Osburg was the direct result of said injuries inflicted as aforesaid, to which the defective and unreasonably unsafe condition of the said machine also directly contributed.
“Plaintiff, therefore, by reason of the premises aforesaid, states that he has been damaged in the sum of twenty thousand dollars ($20,000), for which he asks judgment with costs of suit.”
The defendant in its answer denied, specifically, the various allegations of the petition, and contained also an averment that the condition of the rip-sawing machine complained of was then and there well known to the plaintiff and that he was guilty of negligence contributing to his injuries. The reply was a general denial.
The facts out of which the litigation arose, as disclosed by the record, are about as follow: The accident occurred in July, 1891, while plaintiff was a laborer in the service of defendant. At that time there was a rip-sawing machine, immediately adjoining, and a few feet from, the machine operated by plaintiff, which was used by the various workmen in that part of the mill, including plaintiff, as occasion might require. Plaintiff had worked in the same position for about five months *599 before the accident, and during that time frequently-used the machine which it is claimed caused the injury. This machine had a table about six feet long by three to four wide. The saw worked near the center of the table, lengthwise, but somewhat nearer one side of the table than the other. It was operated by a pulley underneath, connected with a shaft below the floor, which supplied the motive power for propelling the saw. There was a sliding gauge on the saw table about eighteen inches long, used for regulating the width of strips of lumber when being cut, which was attached to the table by means of a bolt which worked in a slot, which gauge when in position was parallel with the saw.
At the time the accident happened, plaintiff was operating a moulding machine near the rip-saw, and Osburg, a fellow employee, was using the saw, when a stick of pine wood seven eighths of an inch in thickness, one and one eighth of an inch in width, and about eighteen inches in length, was thrown from the saw, which struck plaintiff on the upper part of the chest near and to the right of the breast bone, and about the second and third ribs. The skin was not broken.
The evidence tended to show that one of the set screws in the gauge was loose and had been for some time, and when in this condition, as it was at the time of the accident, the saw would bind and throw the piece. The plaintiff testified that he examined the ripsaw five or ten minutes after the accident and that the screw was loose and worn and the saw bound. A piece of wood can only be thrown from the saw when it binds, or when dropped upon it. None of the witnesses saw the piece of pine which struck plaintiff leave the machine, but the evidence tended to show that it would not have been thrown if the gauge had not bound.
At the time, of the trial, plaintiff was suffering *600 from pulmonary consumption. Other facts will be adverted to in the course of this opinion, as it may become necessary to do so.
It is contended by defendant that the petition fails to state a cause of action. The specific objections are that it does not set out the acts of negligence relied on with a reasonable degree of particularity, that they were negligently done, nor does it specify the act which it is claimed caused the injury, and allege that it was negligently or carelessly done. As there was no objection taken to the petition in .the court below, every defect therein, if there be any, was cured by the verdict, unless it states no cause of action. The rule is that when a defendant pleads to the merits he thereby waives all objections to mere formal defects, and the only objections that can be raised in this court are the objection to the jurisdiction of the court over the subject-matter of the action, and that the petition, when taken all together, fails to state a cause of action; not that a cause of action is defectively stated. Grove v. City of Kansas, 75 Mo. 672; Spurlock v. Railroad, 93 Mo. 530; Bowie v. Kansas City, 51 Mo. 454.
Moreover, the code requires (sec. 2074,"R. S. 1889) that “in the construction of a pleading, for the purpose of determining its effect, its allegations shall be liberally construed, with a view to substantial justice between the parties.” Not only this, but it is provided by the statute of jeofails that no judgment after trial and submission shall be “reversed, impaired, or in any way affected” for omitting any allegation or averment, without proving which the triers of the issue ought not to have given such a verdict. R. S. 1889, sec. 2113.
Tested by these rules of construction and the provisions of the statute quoted, there can be no question as to the sufficiency of the petition to support the verdict.
*601 It is also contended that it is admitted by the petition, and shown by the evidence for defendant, that the injuries to plaintiff were occasioned by the negligence of his fellow servant Osburg, and that it does not appear that the alleged defect in the set screw was the proximate cause of plaintiff’s injuries. If the injuries were occasioned by the acts of plaintiff’s fellow servant, he was not entitled to recover, b.ut the trial proceeded upon a different theory; that is, that the unsafe condition of the set screws was the basis of the negligence. This is evidenced by the instructions given, which are as follows:
At the request of plaintiff, the court instructed the jury as follows:
“1. The court instructs the jury that if they find from the evidence, that in July, 1891, the plaintiff was in defendant’s employ and that while in the line of his duty he was struck on the chest and breast and injured by a piece of lumber thrown from a rip-sawing machine, and that the said rip-sawing machine was then operated by another person in the employ of defendant who was using said machine in the line of his duty, and if they further find from the evidence that the gauge on the said rip-sawing machine had upon it a set screw which was defective and out of repair and that in consequence thereof said machine was not reasonably safe to use or operate and that the said piece of lumber was thrown therefrom upon plaintiff as the direct result of such defect and condition; and if they further find that the defendant knew, or by the exercise of ordinary care would have known, of such defect and condition and that in consequence thereof said machine was not reasonably safe to use or operate, in time to have repaired the same before plaintiff was injured, and that plaintiff had no knowledge *602 of the same at the time, then they will find a yerdiet for the plaintiff.
“2. The court instructs the jury that if they find for the plaintiff, they will assess his damages at such sum, not exceeding twenty thousand dollars ($20,000), as the jury may believe, from the evidence, will compensate him for all loss of time and the reasonable expenses for medicine and medical attendance; also all pain of the body and mind that the jury believe, from the evidence, he has sustained and will hereafter sustain as the direct result of said injuries.”
The court, of its own motion, gave the following instruction: “The jurors are also instructed that, if they find a verdict in favor of plaintiff, they should only award him damages for such injuries as were the immediate or proximate result of being struck by the piece of wood in question.”
The following instructions were given at the instance of defendant, to wit:
“1. The court instructs the jury that they are the sole judges of the weight of the evidence and credibility of witnesses, and if you believe any witness has willfully sworn falsely to any material matter in controversy you should reject such false testimony, and are at liberty to disregard or reject the whole of such witness’ testimony. In passing upon the testimony of any witness and the weight to be attached to his testimony, you should, in connection with all the other facts and circumstances proved, take into account the conduct and appearance of such witness upon the stand; his interest in the result of the trial, if any; the motives actuating him in testifying; the probabilities of the statements of such witness; and his inclination to speak truthfully or otherwise as to matters within his knowledge.
*603 “2. The' jurors are instructed that there is no evidence before them tending to show that plaintiff was injured by reason of the shafting mentioned in the petition being bent, or by reason of the incompetency of the man Osburg to run or operate the rip-sawing machine in question.
“3. To entitle the plaintiff to recover by reason of the alleged defects in said machine, the jurors must believe and find that said piece of wood was thrown from said machine by reason of such defect, and not from any other cause; and, in that connection, if they believe that it was occasioned by the negligence of the said Osburg, that then the plaintiff is not entitled to recover.
“4. To entitle the plaintiff to recover, the jurors must believe and find, from the evidence, that the gauge on the rip-sawing machine was defective or out of repair; that such defect was known to the defendant, or might have been ascertained by it by the exercise of reasonable care, and that the same was not known to the plaintiff; also that such defect or want of repair was the direct and immediate cause of the piece of wood which struck plaintiff being thrown from the saw, and that the said piece of wood was not thrown from said saw by reason of any negligence on the part of the man Osburg in operating the said machine. Therefore, if the jurors believe and find, from the evidence, that the said piece of wood was not thrown from the said saw by reason of any defect in the said gauge; or, if there was a defect in the said gauge, that the same was not known by the defendant and could not have been ascertained by it by the exercise of reasonable care, or that the said Osburg would, with the exercise of reasonable care, have run the said piece of wood through said saw without the same catching thereon or being thrown therefrom, even if the same was defective; or if they *604 believe and find, from the evidence, that said piece of wood was thrown from said saw by mere accident or for some unexplained cause, then the verdict should be in favor of the defendant.”
These instructions clearly show that the case was tried upon the theory that the injury was caused by a screw on the rip-sawing machine which was out of repair, and must be heard and disposed of by this court on the same theory. As was said in Walker v. Owen, 79 Mo. 568, defendant “must stand or fall in this court by the theory on which he tried and submitted his case in the court below.” See, also, Holmes v. Braidwood, 82 Mo. 610; Whetstone v. Shaw, 70 Mo. 575.
There was no evidence that Osburg was either incompetent or negligent, and instructions 3 and 4, given at defendant’s instance on that theory of the case, were unauthorized, but it will not now be heard to complain of an error which it invited. Schmitz v. Railroad, 119 Mo. loc. cit. 275; Alexander v. Clark, 83 Mo. 483; Flowers v. Helm, 29 Mo. 324.
A still further contention is that there was a fatal variance between the allegations of the petition and the proofs, in that the same evidence which tended to establish the fact of defendant’s negligence in permitting the set screw to become out -of repair and cause the injury to plaintiff, was a positive contradiction of the allegation that the injuries were the result of the negligence of plaintiff’s fellow servant, Osburg. Conceding this position to be true, defendant, in order to have availed itself of the advantage of the objection which it now urges, should have moved the court to require plaintiff to elect upon which alleged'cause of action he would proceed, and to strike out the other; but, in failing to do this, it can not now raise the objection; it comes too late, and must be held to have been waived.
*605 It has already been said that there was no evidence that the accident was caused by the negligence of plaintiff’s fellow servant, Osburg, in operating the rip-saw, and the jury so found under the instructions; but that was no reason why plaintiff was not entitled to recover upon the other theory of the case, and the one in fact upon which the case was tried by both parties, to wit: the defective condition of the set screw.
It is also contended that the verdict is against the weight of the evidence, and that the judgment ought to be reversed for that reason. It is only in case there is no substantial evidence to support the verdict, that the judgment rendered thereon will be reversed. Long v. Moon, 107 Mo. 334; Powell v. Railroad, 76 Mo. 80; Landis v. Hamilton, 77 Mo. 554; Jackson v. Hardin, 83 Mo. 175; Avery v. Fitzgerald, 94 Mo. 207. It can not be said that there was no substantial evidence to support the verdict rendered in this case. Where the evidence is conflicting, this court will not undertake to weigh it in order to determine upon which side the weight preponderates. That is the province of the jury, the triers of the facts.
A still further contention is that the disease of pulmonary consumption did not result proximately from the blow plaintiff received on the chest, and it was error to permit the jury to take it into consideration in considering of their verdict. This was a question for the jury under the evidence, which tended to show that consumption was superinduced by the blow on the breast. There was no intervening agency in this case between the blow on the chest and the consumption which followed in a few months thereafter. Even had there been an intervening agency contributing to the result of the injury, if the result might have been expected to occur in the ordinary and natural course of events the defendant is not relieved from *606 responsibility for the injury. Defendant should only be held liable, however, for such injuries, pain, and suffering, as- were the necessary result of the blow inflicted on the breast, and which would not, in all probability, have ensued but for it.
It would not do to say, that if A commit an assault on and wound B, which renders it necessary to amputate one of B’s limbs, or if gangrene set in after the wound is inflicted, that A would not be responsible in damages to B for such consequences. In such case A’s wrongful act is the primary cause of the injury, and is responsible for all consequences which flow naturally and directly therefrom.
The bacilli, which, it is contended by defendant, were the primary cause of the consumption in plaintiff in this case, were no more an intervening agency than the surgeon’s knife used in amputating the limb, or gangrene, in the supposed case, and it will not be seriously contended that the assault in such circumstances was not the proximate cause of the loss of the limb, or injuries thereto in consequence of the gangrene. Here, according to the testimony of the medical witnesses, the blow rendered the plaintiff more susceptible to consumption, which was, they seemed to think, superinduced by it.
In Railroad v. Buck, 96 Ind. 346, Buck, who was a passenger on the railway, stepped from a train, after it had passed the station, and fell through a bridge. By the fall, his jaw, back and ankle were injured, and concussion of the brain produced. The shock that his nervous system had received and the depressing influence that it had upon his system had rendered it less able to bear the continued fever, and typho-malarial fever, and the surgical fever following his injuries put him in a condition to take on malarial fever, the result of which was hemorrhage of the bowels, from which he *607 died, and it was held that the death was attributable to the negligence of the railroad company, and that it was not necessary to show that the injury was the sole or direct cause of the death.
In the course of the opinion the court quoted with approval from what was said by the supreme court of Michigan in Beauchamp v. Saginaw Mining Company, 50 Mich. 163, as follows: “It is clear beyond dispute that the cold taken, pneumonia and death were independent and separate from the injury received and sickness resulting therefrom. Can it be said with judicial certainty that the injury, the sickness and weakness following therefrom, did not directly cause or largely contribute to the attack of pneumonia, and that the party wrongfully injured was as able to withstand this resultant attack as he would have been Tf a good, healthy, well nourished boy’ £S at the time he received the injury? If the injury received and sickness following concurred in, and contributed to, the attack of pneumonia the defendant must be held responsible therefor. It can not be said that there was a second wrongful act, or a disease, wholly independent of the first wrong, which caused the death of the boy.”
So, in Railroad v. Kemp, 61 Md. 74, it was held that it was a question for the jury to determine as a matter of fact from all the evidence before them, whether or not a cancer, which first made its appearance at a place where plaintiff had received an injury by reason of the negligence of the defendant, was the natural and proximate consequence of the blow received, and if so that it was a proper element to be considered by the jury in awarding damages for the pain and injury suffered by plaintiff.
Again, in Dickson v. Hollister, 123 Pa. St. 421, where the plaintiff received a wound by falling into a coal hole, and erysipelas afterward developed in the *608 wound, it was held that it was a reasonable inference for the jury under the evidence, that if there had been no wound there would have been no erysipelas. The court said: “Nothing intervened to produce this disease other than might have been “fairly anticipated as the direct, although not the necessary, result of the injury; as well might we attribute the contact of the atmosphere, or the microscopic existence therein, as an intervening cause in such eases.” See, also, Lapleine v. Railroad, 40 La. Ann. 661; Quackenbush v. Railroad, 73 Iowa, 461; Sutherland on Damages [2 Ed.], section 38.
The evidence in the case in hand showed that the plaintiff was a stout, healthy man before being struck on the breast by the piece of timber; that he had never had any symptoms of consumption before, and which thereafter developed. The evidence of several physicians tended to show that the disease might properly be attributed to the injury. The question was properly submitted to the jury under the evidence.
It is insisted that the court erred in permitting Dr. Yarnell, a witness for the plaintiff, to testify over defendant’s objections, as an expert, to the effect that the blow could have caused the condition he found plaintiff’s lung in at the time when he treated him after the injury, without it being shown that he was qualified as such, and after he had stated that he was not an expert on lung trouble.
This witness had been a practicing physician for twenty-five years. He stated that he was not a specialist for lung trouble, and, not being an expert in that line, he turned him (plaintiff) over to Dr. Eoster. All the witness stated was that he was not an expert in the treatment of consumption. He was clearly as competent, from his long experience as a practitioner, to give his opinion as to the cause of the consumption in plain *609 tiff, as he was to give his opinion as to the cause of any other disease in any of his patients, although he may not have had any experience in the treatment of such disease. It would seem that no error was committed in permitting this evidence to go to the jury. The same may be said with respect to the testimony of Dr. Link, as to the condition of plaintiff’s lung in May, 1892. The judgment should not be reversed because of the admission of this evidence.
There was no error committed in excluding the evidence of the witness Rector as to whether the sawing machine could have been operated with set screws.
Nor was there any error committed in giving or refusing instructions. The case was fairly presented to the jury, and the judgment should be affirmed. It is so ordered.
Sherwood and Gantt, JJ., concur.