CASE 78—PETITION ORDINARY—MAY 12.

## Rennebaum v. Atkinson & Co., Etc.

APPEAL FROM BELL CIRCUIT COURT.

1. CONTRACT OF SALE—WAIVER OF LIEN BY SUBSEQUENT CONTRACT. —Where parties enter into a contract for the sale of real estate and machinery, and the consideration for both is stated in one lump sum, and a lien reserved for the payment thereof on all the property, and they thereafter enter into another contract by which the price of the machinery is fixed separately, and it was stipulated that the new contract was not to affect the former one "except in regard to the above property, and except that Rennebaum is given about one year in which to perfect his title to the property described in such contract, and clear up the liens thereon," and there is no provision therein for a lien to secure the price fixed on the machinery, the new contract will be treated as a substitute for the original one as to the machinery.

2. COUNTER-CLAIM.—In a suit for the recovery of the possession of

Rennebaum v. Atkinson & Co., etc.

.specific personal property, a contract for the purchase of real property can not be pleaded as a counter-claim.

A. K. COOK FOR APPELLANT.

1. One may be the owner of property and yet not entitled to the possession thereof.
2. The second paragraph states a cause of action in favor of appellant against appellees which is connected with the subject·matter of the petition and arose out of the transaction which furnished the foundation for the cause of action stated in the petition. Civil Code, sec. 961.

GEORGE W. SAULSBERRY FOR APPELLEES.

1. The matter attempted to be pleaded as a counter-claim by appellant is an attempt to specifically enforce a contract for the sale of real estate, and can not be so pleaded in this action for the possession of specific personal property. Lawson's Rights, Remedies and Practice, vol. 7, sec. 3492; 45 California, 8; Civil Code, sec. 96.
2. Appellant in his answer fails to deny the ownership of appellees, or his own possession, and pleads no justification for the possession, which is in itself a confession of wrongful possession, as charged in the petition.
3. A counter-claim must be a complete cause of action within itself, and have all the elements of an original suit; and even if appellant could so plead by way of counter-claim he has not stated a good cause of action for the specific performance of the contract, because he has not alleged that there was ever any arbitration, or offer on his part to arbitrate, although it is provided in the contract that any differences arising out of the same were to be arbitrated.

JUDGE DuRELLE DELIVERED THE OPINION OF THE COURT.

The appellees brought a claim and delivery suit against appellant for certain saw mill machinery alleged to be of the value of $800, making the customary averments of ownership in appellees and wrongful detention thereof by appellant. To this action appellant filed an answer and counter claim in three paragraphs, the third paragraph of

Rennebaum v. Atkinson & Co., etc.

which was subsequently withdrawn and dismissed by him and an amendment filed to the first and second paragraphs. The trial court sustained a demurrer to the first paragraph as amended, and on appellees' motion struck out the second paragraph as amended as being irrelevant. By the first paragraph he denied that he was in the wrongful possession of the machinery, or wrongfully detained the same, and stated that appellees bought the machinery, together with other property, and, at the time of the sale, a written contract was executed, whereby appellees agreed to pay him the aggregate sum of $4,000 for the machinery and other property mentioned, and a lien was retained upon the machinery and other property to secure the payment of the purchase money, which was still unpaid, and that he held the property to secure him in the payment thereof; that the contract of sale filed as a part of the paragraph was in two parts, executed, respectively, in December, 1894, and February, 1895, by the terms whereof appellees agreed to pay him $500 for the machinery sued for, and executed a note therefor, which he assigned to one Fitzpatrick, and that he had a lien upon the machinery to secure the payment of that note and the payment of the remaining consideration of $3,500, which he prayed might be enforced for his benefit and the benefit of Fitzpatrick.

We will first consider the demurrer to the first paragraph as amended. The two contracts filed as part of this paragraph do not sustain appellant's contention. By the first contract of December, 1894, the saw mill machinery was sold by appellant to appellees, and he also agreed and bound himself, in consideration of $4,000, to be paid in

three equal installments, that sum being also the considera-
tion for the machinery, to sell appellees by general war-
ranty deed (except certain reservations made by the Mid-
dlesboro Town Company in its deed) a lot of land in Mid-
dlesboro, the deed to be accompanied by an abstract run-
ning back thirty years or more. He further agreed to as-
sign appellees a contract with Bailey & Co., for sawing
three million feet of lumber, or to obtain a new contract for
appellees with Bailey & Co., as a substitute for that con-
tract. He also agreed to furnish a large quantity of logs,
to be sawed by appellees, within a certain specified time.
The contract contained a provision that the notes for the
three installments of $1,333.33 each were to be lodged
in a designated bank, where they were to remain until all
liens were cleared up, and all legal and just claims against
the property paid out of the notes before any part thereof
was to be paid appellant. A lien was reserved by this con-
tract on all the property conveyed for the payment of all
the notes.

The second contract of February, 1895, begins with a
statement that appellant sold and transferred to appellees
the machinery for $500, for which appellees had executed to
him their note bearing interest. This contract contained
an agreement to indemnify the vendees against loss by rea-
son of an attachment sued out and levied on some of the
machinery; and it was stipulated that the new contract was
not to affect the contract of December, 1894, "except in re-
gard to the above property, and except that Rennebaum is
given about one year in which to perfect his title to the pro-
perty described in said contract and clear up the liens there-

on." When the title should be cleared, the appellees were to execute their notes as of February, 1895, the date of the second contract, due in nine, fifteen and eighteen months. after date, one note being for $833.33 and two for $1,333.33 each. If, at the time of perfecting the title, the date fixed for maturity of any of the three notes should have arrived, appellees were to pay the sum such notes would have amounted to at that date, instead of executing the notes; and in case of Rennebaum's failure to perfect the title, appellees were "to pay him the rental on said property mentioned in said former contract and not herein sold (i. e., the five-acre lot in Middlesboro), equal to 8 per cent. interest on $3,500." And on his giving notice of his inability to perfect the title, appellees were to surrender possession of the premises, in good order and condition.

It is evident from the terms of this new contract that it was a substitute for the first one, except as to the matters not therein specifically referred to. It fixed a valuation upon the machinery, which had not been done in the first contract, and passed the title thereof to appellees for the consideration of their obligation to pay $500. Under this contract there was no provision for a lien to secure the payment of this amount. As to this property, a new and complete contract was substituted for the old one, and, in our view, upon a fair construction of the language used, separate and distinct from the contract as to the land.

The first paragraph as amended contains no denial of the averments of the petition, excepting a denial of legal conclusions, and no justification of the undenied possession.

and detention of the property. We are of opinion, therefore, that the trial court properly sustained the demurrer.

The second paragraph sets up the provisions of the two contracts, and alleges that by the second contract the parties agreed and consented to the December contract, except as modified by the contract of February, 1895; "and further they agreed that this defendant (appellant) sold to plaintiffs (appellees) the same property described in the petition for the sum of $500, for which sum the plaintiffs then, 13th February, 1895, signed and delivered to defendant their note, bearing interest from date at 8 per cent. per annum." It was further alleged that, at the date of the second contract, Fitzpatrick held a lien on the property, which he released upon the delivery to him of the note for $500. It charges that appellees fraudulently procured Bailey & Co. to state that they could not perform the contract which appellant had agreed to assign to appellees; avers that he did assign such contract, but that appellees refused to accept it, and afterwards entered into another contract with Bailey & Co. for performing the same work. It further avers that he has perfected the title to the land, has removed all the liens thereon, except a lien held by Fitzpatrick; that Fitzpatrick would answer and release in this suit, and that appellant here tenders to appellees his deed of general warranty, executed and acknowledged, conveying good title to the property to plaintiffs. The prayer of this second paragraph is, that appellees be compelled to pay the aggregate sum of $4,000 and interest, and that appellant be adjudged a lien upon the machinery in question in this suit and the land described in the deed.

Rennebaum v. Atkinson & Co., etc.

The question arising upon this paragraph is, whether a suit to compel specific performance of a contract for the purchase of real property can be pleaded as a counter-claim to a suit for the recovery of the possession of specific personal property.  A counter claim is defined by the code (section 96) as a "cause of action in favor of the defendant against the plaintiff, or against him and another, which arises out of the contract or transaction stated in the petition as the foundation of plaintiff's claim, or which is connected with the subject of the action."  The cause of action set up in the second paragraph of the answer does not arise out of any contract or transaction stated in the petition.  No contract is there stated.  The transaction therein stated, and which is the foundation of appellant's claim, is not the contract of sale whereby appellees became the owner of the mill machinery, but is the wrongful possession of the machinery by appellant.  The contract of sale to appellees was executed and complete.  What appellees brought suit for was a new transaction, viz.: possession by appellant of their specific personal property. Nor is the specific enforcement of the contract of sale of the realty, in our judgment, connected, within the meaning of the code, with the subject of the original action, which is the recovery of specific personal property.  (See Nolle v. Thompson, 3 Met., 123 and Lawson's Rights, Remedies and Procedure, vol. 7, section 3492.)

For the reasons given, the judgment is affirmed with damages.