## THE STATE v. WILLIS S. MACRORIE.

Argued February 17, 1914—Decided December 9, 1914.

1. When the attorney of the state, upon the examination of a witness called by him, receives an answer which, although unfavorable to the state's case, is what he expected it to be, it is harmful error to permit him afterward, for the purpose of discrediting the witness, to prove facts which tend to show that, on a prior occasion, she had made a statement which was contradictory of the answer given by her.

2. As a general rule medical works are not admissible as a substantive medium of proof of the facts they set forth, and it is only when a witness refers to them as an authority for his own evidence that they are receivable in evidence, and then only for the purpose of contradicting him.

3. Upon a trial of an indictment for fornication, charged to have been committed upon a certain day and in a certain county, the evidence showed that the girl with whom the fornication was charged had spent a considerable portion of her time in another county, and did not take up her residence in the county in which

'the indictment charged the offence was committed until some two weeks prior to the date laid in the indictment. There was also proof from which the jury might have found that the defendant had had sexual intercourse with this girl a number of times during the three months preceding the date so laid. Upon this state of the evidence, the trial court charged the jury that time was not an essence of the offence, and if they believed that the defendant committed the crime charged in the indictment on some other day that they could find the defendant guilty. *Held*, that it was error to so charge, in the absence of proof that the other acts occurred within the jurisdiction of the court, *i. e.*, in the county in which the indictment was found.

On error to Union County Quarter Sessions.

Before GUMMERE, CHIEF JUSTICE, and Justices PARKER and KALISCH.

For the plaintiff in error, *Clarence E. Case.*

For the defendant in error, *Alfred A. Stein,* prosecutor of the pleas.

The opinion of the court was delivered by

GUMMERE, CHIEF JUSTICE. MacRorie, the plaintiff in error, and defendant below, was convicted in the Union Quarter Sessions upon an indictment charging him with the crime of fornication, alleged to have been committed with one Edith N., a young girl of eighteen, in the town of Westfield, on the 19th of November, in the year 1912.

The first witness called by the state was the girl herself; and, for the purpose of proving the sexual act, the prosecutor asked her the direct question whether MacRorie had not had connection with her at the time and place mentioned in the indictment. Her answer was a denial of the intercourse. The prosecutor thereupon, for the avowed purpose of discrediting her testimony, proceeded to prove, by a number of witnesses, that shortly after MacRorie's arrest upon the charge they were present at an interview between the chief of police of Plainfield and the girl, had at a·school in that city which

the latter attended; and that in their presence the girl made a statement (which was reduced to writing and signed by her), which, as the prosecutor asserted in arguing the admissibility of this testimony, was a point blank contradiction of her testimony given on the witness-stand. This proof was received over objection on the part of the defendant, and its admission is now relied upon as a ground for reversing the conviction.

The theory upon which the ruling of the trial court, apparently, was based—certainly the theory upon which the prosecutor sought to justify his offer of the testimony—was that as the girl had shown, by her denial of sexual relations with the defendant, that she was a hostile witness to the state, the evidence was admissible for the purpose of discrediting her testimony.

In the case of *State* v. *D'Adame*, 84 *N. J. L.* 386, the Court of Errors and Appeals held that where the state was "surprised" by adverse testimony of a witness called by it, the trial court might, in the exercise of its sound discretion, permit proof of self-contradictory statements previously made by such witness, for the purpose, not of proving the truth of such statements, but to discredit, or neutralize, the effect of such adverse testimony. Later, and in the case of *State* v. *Kysilka*, 85 *Id.* 712, the same court, having pointed out the dangerous character of such testimony (the likelihood of its being considered by the jury as evidential of the fact declared therein), and the necessity of its being made plain to the jury by the trial court that they are not to consider it as having any tendency to prove the truth of the charge made against the defendant, declared that it should not be received, except where its admission was necessary to prevent a miscarriage of justice because of a "surprise" in the form of an adverse evidential statement on a material point where the state had good and sufficient reason to expect a favorable one.

The only question to be considered by this court, therefore, is whether the proofs objected to came within the limited area of competency pointed out by these decisions, viz., whether the denial by the girl was a surprise to the state;

whether the state had good and sufficient reason to expect an admission on her part of sexual relations with the defendant as charged in the indictment. A reference to the record of the proceedings had at the trial, which has been returned with the writ of error, is all that is necessary for the solution of this question; for it appears by that record that after the prosecutor had asked the girl whether MacRorie had not had intercourse with her at the time and place mentioned in the indictment, and she had answered, "No, sir," he said to the witness "No? Is that your answer?" and that upon the witness replying "Yes, sir," the prosecutor said "I expected that would be." The prosecutor having received from the witness the answer to his question which he expected the witness to make, can hardly be said to have been surprised by that answer, and, not having been surprised, the testimony offered by him, and received by the court, was plainly incompetent under the rule laid down in the cases cited.

It has been suggested that this testimony, even if incompetent, was harmless, because, after its admission, the prosecutor offered the written statement signed by the girl, and the trial court refused to receive it in evidence for the reason that it was not made in the presence of the defendant. We cannot take that view of the effect of this testimony. By it the jury were informed that the girl, in the presence of the witnesses who were testifying, had made a statement which had been reduced to writing and signed by her in which she had, so the prosecutor declared, in their presence, admitted her illicit relations with the defendant. This testimony, so the record discloses, was admitted during the first day of the trial, while the written statement was not offered until the close of the state's case on the second day. During all of that time the minds of the jurors remained impressed with the fact that this girl had admitted, in the presence of these witnesses, the existence of sexual relations between herself and the defendant. The action of the trial court, at the close of the testimony submitted by the state, in refusing to allow the written statement to be laid before the jury, can hardly be supposed to have wiped from their minds that impression,

for the former testimony (which, of course, had no place in the case except upon the theory that such an admission had been made by the girl) was not adverted to by the trial judge at the time of his ruling upon the admissibility of the written statement; nor was there any suggestion from the court at any time, much less an instruction, that the jurors should exclude from their consideration of the case all and every portion of the testimony bearing upon the making of the statement. Without such an instruction we cannot but believe that the objectionable testimony had a material influence upon the minds of the jurors in reaching the conclusion that the offence charged against the defendant in the indictment had been committed by him.

A second reason assigned for reversal which we consider meritorious is based upon another ruling on evidence. The defendant had called one William F. Bullman, a practicing physician of more than twenty years professional experience, who testified that he had made a physical examination of Edith N. some months after the time set out in the indictment, and had found the hymen to be intact; and that she could not have had sexual intercourse with a man without a rupture of that membrane resulting therefrom. Upon the cross-examination of this witness the prosecutor was permitted, over objection, to read to the witness an extract from Gray's Anatomy, Descriptive and Surgical, in which the author stated of the hymen that "it may also persist after copulation, and cannot consequently be considered as a test of virginity."

The plain purpose of the prosecutor in reading this extract was to bring to the attention of the jury the fact that the author of this work held a contrary view to that expressed by the witness on the stand. As a general rule medical works are not admissible as a substantive medium of proof of the facts they set forth. It is only when a witness refers to them as an authority for his own opinions that they are receivable in evidence, and then only for the purpose of contradicting him. *Pinney* v. *Cahill*, 48 *Mich.* 584; *New Jersey Zinc Co.* v. *Lehigh Zinc Co.*, 59 *N. J. L.* 189.

Another error complained of by the defendant is contained in the following instruction to the jury: "The indictment charges the offence was committed on November 19th, 1912, and if time was of the essence of the offence then you would be confined to the commission of the crime on that date. But time is not of the essence of the offence in this case and therefore if you believe that the testimony shows that the defendant committed the crime charged in the indictment with Edith N. on some other day, then you will be justified in finding the defendant guilty. But your investigation should not go beyond a period of two years prior to the time of the finding of the indictment."

The evidence showed that Edith N. had been a resident of Somerset county; that she had spent a considerable portion of her time prior to the 5th of November in the city of Newark, and that she did not go to Union county to take up her residence there until the 5th of November, some two weeks prior to the date laid in the indictment. There was also proof from which the jury might have found that the defendant had had sexual intercourse with this girl some eight or nine times during the three months preceding November 22d; and that they had been in one another's company during these three months on numerous occasions at places outside of Union county. Under this state of the proofs it was just as likely that these sexual indulgences occurred outside of the limits of Union county as within its borders. It was error, therefore, to permit the jury to convict the defendant for sexual acts other than that alleged in the indictment, in the absence of any proof that those other acts occurred within the jurisdiction of the court.

As this case must go back for a new trial we deem it proper to state that we have examined the other grounds of reversal submitted by the plaintiff in error and consider them to be unsubstantial.

For the reasons which we have indicated the conviction under review must be reversed.