MICHAEL DRUCKER *v.* PHILADELPHIA DAIRY PRODUCTS COMPANY, INC., &c.

(*May* 22, 1933.)

PENNEWILL, C. J., and REINHARDT, J., sitting.

*James R. Morford* for plaintiff.

*John J. Morris, Jr.,* for defendant.

Superior Court for New Castle County, Sums. Case to Kent County, No. 82, November Term, 1932.

REINHARDT, J., delivering the opinion of the Court:

This is an action instituted by Michael Drucker against the Philadelphia Dairy Products Company, a corporation of the State of Pennsylvania, to recover damages for personal injuries which the plaintiff claims he sustained in a collision between his automobile and a truck of the defendant. The case was tried before a jury and the plaintiff recovered a verdict.

In the course of the trial the plaintiff testified that prior to the time of the collision he was in good health and that very soon thereafter he developed serious heart trouble caused, he claims, by shock received in the collision. During the trial he called as one of his witnesses a physician who testified that the plaintiff was then suffering from heart trouble and that this trouble could have been produced by shock received in the collision.

The defendant called as one of its witnesses at the

trial Dr. Harold L. Springer who testified that he had had thirty-one years' experience as a practicing physician and surgeon, had considerable experience as a diagnostician and had occasion to see a good many heart cases; that as a surgeon he had to check the condition of the heart before operating on the patient. He further testified that he was not a specialist in heart diseases and not a heart man, and he expressly denied any familiarity with, or any knowledge of, certain standard medical treatises on heart disease which were called to his attention while under cross-examination by plaintiff's attorney. He further testified that he had made two examinations of the plaintiff the first shortly after the accident and the second about ten months later and just before the trial of the cause; that he had found no heart trouble upon the first examination, but did find serious heart trouble upon the second examination of the plaintiff. He further testified that in his opinion such heart trouble as he found in the plaintiff did not result from the collision in which the plaintiff claimed to have been injured.

The plaintiff now moves for a new trial upon the following grounds:

1. That the verdict of two hundred dollars was inadequate in amount;

2. That plaintiff's attorney was not permitted by the Court to cross-examine Dr. Springer by the use of certain medical treatises in an attempt to impeach the testimony of the doctor to the effect that plaintiff's heart condition never resulted from the collision;

3. That Doctor Springer, on cross-examination, established conclusively that he was not qualified as an expert to testify as to the plaintiff's alleged heart condition, or to express an opinion as to the probable cause or probable contributing cause thereof; that the Court itself expressed an opinion to that effect and that, therefore, the testimony

of Dr. Springer on direct examination should, upon application of plaintiff's attorney, have been stricken out.

In consideration of the motion, the third reason in support thereof will first be discussed.

An examination of the record in this cause discloses the fact that the only statement made by the Court at the trial in regard to the qualifications of Dr. Springer as an expert was "He (the doctor) does not claim to be an expert." This was at most an inaccurate statement by the Court of the doctor's claim. What he did claim was that he was not a specialist in heart diseases and that he was not a heart man. It can hardly be seriously contended that this remark of the Court was more than an inaccurate statement of the claim made by the Doctor. It manifestly was not an expression of the Court's opinion as to the qualifications of Dr. Springer as an expert witness. In his direct examination, Dr. Springer clearly qualified himself as an expert witness who was competent to express an opinion in the matter then under consideration. In his cross-examination the doctor expressly denied any knowledge of certain medical treatises on heart disease and stated that he was not a specialist in that disease.

The real question then is, did the doctor by such testimony given in cross-examination disqualify himself as an expert competent to express an opinion as to whether shock from a collision could or could not be the cause of heart trouble such as that from which the plaintiff was suffering. If he did thus disqualify himself his testimony should have been stricken from the record.

Expert medical witnesses derive the knowledge upon which they base their opinions from one or both of two sources:

(a) Their practical experience over a period of years in dealing with matters involving the subject under consideration;

(b) Their reading of, and familiarity with, standard treatises of acknowledged weight and authority upon the subject under consideration.

*Lawson on Expert Evidence* at *page* 246 expresses the same thought, as follows:

"An expert may be qualified by study without practice, or by practice without study."

Dr. Springer, in his testimony, seems to have based his opinion solely on his practical experience of thirty-one years involving, *inter alia,* the consideration of a good many heart cases.

An examination of authorities shows rather clearly that a physician of practice and experience is an expert and that it is not necessary that a witness of this class should have made the particular disease involved in any inquiry a specialty in order to make his testimony admissible as an expert.

In 1 *Greenleaf Ev.* (*16th Ed.*), *paragraph* 430, the author says:

"On matters in which a special medical experience is necessary, the question may arise whether a general practitioner will suffice or whether a specialist in the particular subject is necessary. The Courts usually and properly repudiate the finical demand for the latter class of witnessess."

In the case of *D. & C. Steam Towboat Co. v. Starrs,* 69 *Pa.* 36, 41, Sharswood, J., said:

"It is objected that they [the experts] were not first shown to be such. This is a preliminary question to be determined by the court in the first instance. If the court shall think they are *prima facie* qualified, it will then be for the jury to decide whether any, and, if any, what weight is to be given to their testimony. It is a matter very much within the discretion of the court below, and if it appears that the witnesses offered had any claim to the character of experts, the court will not reverse on the ground that their experience was not sufficiently special."

In the case of *Seckinger v. Philibert & Johanning Mfg. Co.,* 129 *Mo.* 590, 31 *S. W.* 957, 962, the Court had under

consideration the question of whether a heavy blow on the chest could have produced consumption in the plaintiff.

The Court said:

"It is insisted that the court erred in permitting Dr. Yarnell, a witness for the plaintiff, to testify, over defendant's objections, as an expert, to the effect that the blow could have caused the condition he found plaintiff's lung in at a time when he treated him after the injury, without the witness having shown that he was qualified as such, and after he had stated that he was not an expert on lung trouble. This witness had been a practicing physician for 25 years. He stated that he was not a specialist for lung trouble, and not being an expert in that line he turned him (plaintiff) over to Dr. Foster. All the witness stated was that he was not an expert in the treatment of consumption. He was clearly as competent, from his long experience as a practitioner, to give his opinion as to the cause of the consumption in plaintiff as he was to give his opinion as to the cause of any other disease in any of his patients, although he may not have had any experience in the treatment of such disease."

In the case of *Hathaway's Adm'r v. National Life Ins. Co., 48 Vt. 335*, 351, the Court said:

"The principle is well settled that physicians and surgeons of practice and experience are experts, and that their opinions are admissible in evidence upon questions that are strictly and legitimately embraced in their profession and practice; and it is not necessary that a witness of this class should have made the particular disease involved in any inquiry, a specialty, to make his testimony admissible as an expert."

To the same effect are the following cases: *Kelly v. U. S. (C. C.)*, 27 *F.* 616, 618; *State v. Hinkle*, 6 *Iowa* 380, 385; *Hardiman v. Brown*, 162 *Mass.* 585, 39 *N. E.* 192; *Pridgen v. Gibson*, 194 *N. C.* 289, 139 *S. E.* 443, 54 *A. L. R.* 855, 860.

██ Under the above authorities, it is clear that the witness, Dr. Springer, did not disqualify himself by his testimony on cross-examination from testifying as an expert medical witness; therefore, the denial of the application to strike out his testimony was not error.

The second reason in support of the motion for a new trial will next be discussed.

Counsel for the plaintiff in his brief and in his oral argument, made the following statement:

"The fundamental question, therefore, for the consideration of the Court is the scope of the cross-examination of medical experts and the use of approved medical authorities to contradict an opinion expressed in direct examination."

This statement of the question seems to be somewhat broad. The real question before the Court may, perhaps, be better stated as follows:

"In the cross-examination of a medical expert, may standard medical treatises or other approved authorities be used for the purpose of impeaching the testimony of the expert when he has expressly denied familiarity with, or knowledge of, such medical treatises and, therefore, does not base his opinion upon their contents, but solely upon his own personal experience."

The authorities on this question are apparently at odds. The line of cases cited below holds, in effect, that when a witness is testifying as an expert, it is competent to test his knowledge and accuracy upon cross-examination by reading to him or having him read extracts from standard authorities upon the subject-matter involved whether he is familiar with them or not, and then asking him whether he agrees or disagrees with the authorities. This is held to be a proper method of cross-examination in order to test the learning of a witness who testifies as an expert. *Hess v. Lowery,* 122 *Ind.* 225, 23 *N. E.* 156, 7 *L. R. A.* 90, 17 *Am. St. Rep.* 355; *Wittenberg v. Onsgard,* 78 *Minn.* 342, 81 *N. W.* 14, 47 *L. R. A.* 141; *Sale v. Eichberg,* 105 *Tenn.* 333, 59 *S. W.* 1020, 52 *L. R. A.* 894; *Scullin v. Vining,* 127 *Ark.* 124, 191 *S. W.* 924-927; *Williams v. Nally (Ky.),* 45 *S. W.* 874, 20 *Ky. Law Rep.* 244; *Ganz v. Met. St. Ry. Co. (Mo. Sup.),* 220 *S. W.* 490; *Cisco, etc., Ry. Co. v. Proctor (Tex. Civ. App.),* 272 *S. W.* 308-314; *Osborn v. Cary,* 28 *Idaho* 89, 152 *P.* 473; *Barfield v. So. Highlands Inf.,* 191 *Ala.* 553, 68 *So.* 30, *Ann. Cas.* 1916C, 1097.

Another and perhaps stronger line of cases cited below holds that where a witness is testifying as an expert, it is not competent on cross-examination to read to him or have him read extracts from standard authorities upon the subject-matter involved, or to cross-examine him upon such

authorities unless he has first testified that he is familiar with their contents or bases his opinion upon them.

In *Denver City T. Co. v. Gawley,* 23 *Colo. App.* 332, 129 *P.* 258, 261, the Court says:

In this case "plaintiff's physician was asked on cross-examination if he agreed with the statements made by a certain author in his work entitled ['Bailey on Nervous Diseases'], and the court [below] sustained the objection made to this question. This was not error, because the witness had already stated that he had not read the work, was not familiar with it,. and hence could not have based any of his testimony upon it, and therefore it could not be used to contradict him."

In *State v. Brunette,* 28 *N. D.* 539, 150 *N. W.* 271, 277, *Ann. Cas.* 1916*E,* 340, 347, the Court said:

"Although there is some conflict in the authorities and much obscurity of thought therein to be found, the distinction seems to be very clear. It is that, where the expert has testified from his own experience and from his personal experience alone, and has not based his opinions upon any specific authorities, or upon the authorities generally, the scientific treatise may not be read, either directly or indirectly, to the jury, or to the witness in the presence of the jury, so that in any way their authority may be obtruded upon them. ✻ ✻ ✻ ✻ 'In the case at bar the physician had based his opinion solely on his own experience and observation, and therefore it was error to cross-examine him on the state of the medical authorities in order thereby to get their supposed teachings before the jury.'"

In *W. U. Tel. Co. v. Ammann,* 296 *F.* 453, 454 (*C. C. A.* 3*d Circuit*) the Court said:

"The illegal evidence refers to the testimony of Dr. William W. Maver, defendant's medical expert. It is well settled in New Jersey that, when a physician testifies from his own experience as an expert, he may not be impeached by medical works upon which he has not relied as authority for his testimony. 'It is only when a witness refers to them as an authority for his own opinions that they are receivable in evidence, and then only for the purpose of contradicting him.'"

In *Ullrich v. Chic. City Rwy. Co.,* 265 *Ill.* 338, 106 *N. E.* 828, 829, *Ann. Cas.* 1916*A,* 793, the Court said:

"The law is well settled in this state that scientific books may not be admitted in evidence before a jury,[1] and that such books cannot be read from to contradict an expert witness, except where such expert assumes to base his opinion upon the work of a particular author, in which case that work may be read in evidence to contradict him."

---

[1] *Doe, d. Wedderburn, v. Roe, &c., and Burbage,* tenant in possession, 5 *W. W. Harr.* (35 *Del.*) 229; but see *State v. West,* 1 *Houst. Cr. Cas.* 371.

In *Tilghman v. Seaboard Air Line Ry. Co.*, 171 *N. C.* 652, 89 *S. E.* 71, 75, the Court said:

"The opinion of an expert witness cannot be contradicted by showing on cross-examination what some author has said. * * * 'When an expert has given an opinion and cited a treatise as his authority, the book cited may be offered in evidence by the adverse party as impeaching testimony. But, unless the book is referred to on cross-examination, it cannot be used for this purpose.'"

In *Hall v. Murdock*, 114 *Mich.* 233, 72 *N. W.* 150, 152, the Court said:

"The only circumstances under which medical books can be read in evidence is where the witness has based his opinions upon them, and has referred to them as authority."

The rule is even more broadly stated by Prof. Wigmore, as follows:

"It has been in some Courts held that counsel on cross-examination may, for discrediting purposes, read a professional treatise as opposing the statement of an expert on the stand, or ask whether a contradictory opinion has been laid down by others, but this is generally repudiated." 3 *Wigmore Ev., par.* 1700.

Other cases to the same effect are as follows: *Davis v. U. S.*, 165 *U. S.* 373, 17 *S. Ct.* 360, 41 *L. Ed.* 750; *State v. MacRorie*, 86 *N. J. Law* 401-405, 92 *A.* 578; *Allen v. Boston El. R. R. Co.*, 212 *Mass.* 191, 98 *N. E.* 618; *Griffith v. Los Angeles Pac. Co.*, 14 *Cal. App.* 145, 111 *P.* 107; *Davis v. State*, 38 *Md.* 15-36; *Kern v. Pullen*, 138 *Or.* 222, 6 *P.* (2d) 224, 82 *A. L. R.* 434; *Stout v. Bowers*, 97 *Kan.* 33, 154 *P.* 259; *Bloomington v. Shrock*, 110 *Ill.* 219, 51 *Am. Rep.* 678; *Trav. Ins. Co. v. Davies*, 152 *Ky.* 600, 153 *S. W.* 956.

After careful consideration of all the cases, the Court has concluded to adopt and follow the rule that an expert witness may not be cross-examined upon medical treatises where the witness expressly states that he has not read the treatises and does not base his opinion upon them.

Therefore, the Court was not in error in its refusal to permit the plaintiff's counsel to cross-examine Dr. Springer upon certain medical treatises, he having ex-

pressly denied familiarity with or knowledge of such treatises.

The remaining reason in support of the motion for a new trial will next be discussed. The plaintiff had a verdict in the sum of $200 and it is claimed that this was inadequate in amount. At the trial there was testimony adduced on behalf of the plaintiff to the effect that his injuries were serious and his damages large. There was also testimony on behalf of the defendant to the effect that the plaintiff's injuries were not severe and indeed were trifling. The extent of the plaintiff's injuries and the damages resulting therefrom were issues of fact submitted to the jury for its consideration and decision. In view of all the evidence in the case the jury might have found a substantial verdict for the plaintiff, or it might have found a small verdict for the plaintiff, or even have found a verdict for the defendant. Under these circumstances, the Court is not warranted in disturbing the verdict of the jury.

The motion for the new trial is, therefore, denied.