BY THE

ST. LOUIS, KANSAS CITY AND SPRINGFIELD

# COURTS OF APPEALS

AT THE

OCTOBER TERM, 1909.

---

JOHN C. HARTZLER, Respondent, v. METROPOLITAN STREET RAILWAY COMPANY, Appellant.

**Kansas City Court of Appeals, February 21, 1910.**

1. **PRACTICE: Carriers: Sufficiency of Evidence of Negligence.** There was sufficient evidence to support a finding by the jury that while plaintiff's wife was getting on defendant's car, defendant negligently started the car throwing her down and injuring her.

2. **————: ————: ————: Sufficiency of Evidence of Cause of Death.** There was sufficient evidence to support a finding by the jury that the death of plaintiff's wife was the result of pneumonia and that the pneumonia was the result of injuries received by her in falling from defendant's car.

3. **NEGLIGENCE: Care to Avoid Unusual Result: Death Resulting From Injury.** The rule that one is not required to guard against the happenings of a casualty not reasonably to be anticipated, does not apply to a question of an unusual result following an injury negligently caused. If the defendant was negligent in causing an injury it is liable for all the direct results of that injury.

140 App.]                                       (665)

4. **APPELLATE PRACTICE: Weight of Evidence.** A finding by the jury that defendant's negligence injured plaintiff's wife and that such injury caused her death, without the intervention of other causes, is conclusive on the appellate court.

5. **DEATH: Damages: Penal or Compensatory.** Section 2864, allowing damages for the death of a passenger caused by the negligence of a carrier, is compensatory as well as punitive, and evidence of capacity of wife to do housework is competent.

6. **EVIDENCE: Opinion of Expert.** The testimony of a physician that as the result of an autopsy he found death was caused by croupous pneumonia is direct evidence and not opinion evidence, and is competent.

7. **PRACTICE: Misconduct of Counsel.** Where the trial court has approved a verdict the appellate court will not disturb a judgment on account of misconduct on the part of the attorney for the prevailing party, where the misconduct is not a great departure from the rules of proper decorum.

Appeal from Jackson Circuit Court.—*Hon. H. L. McCune,* Judge.

AFFIRMED.

*John H. Lucas, Charles H. Botsford* and *Charles N. Sadler* for appellant.

(1) It must be proved if not beyond a reasonable doubt, at least with reasonable certainty, that the death was caused by the negligent act complained of, for which defendant is liable. In this sort of action a mere preponderance of the evidence is not sufficient. DeMart v. S. P. & M. Co., 21 Mo. App. 92; Bank v. Railway, 98 Mo. App. 330; Goransson v. Riter-Conley M. Co., 186 Mo. 300; Purcell v. Tenant S. Co., 187 Mo. 276; McGrath v. Transit Co., 197 Mo. 97; Smart v. Kansas City, 91 Mo. App. 586; Young v. Railway, 113 Mo. App. 636; Caudle v. Kirkbride, 117 Mo. App. 412. (2) The statute under which this action was brought is in derogation of the common law, is penal, and is to be strictly construed. Casey v. Transit Co., 116 Mo. App. 235; Higgins v. Railroad, 197 Mo. 300; McQuade v. Railroad, 200 Mo.

150. (3) The injury complained of was not the proximate cause of the death of deceased, other causes intervened after she received the said injuries, which with reasonable certainty may be said to have caused the death of deceased. Foley v. M'Mahon, 114 Mo. App. 442; Saxton v. Railway, 98 Mo. App. 494; Kappes v. Shoe Co., 116 Mo. App. 154; Glasgow v. Railway, 191 Mo. 347; 29 Cyc. of Law and Pro., p. 495, 2 particular injury and notes, and p. 496 and authorities cited in notes; pp. 499 H, 500 and 501, and authorities cited in notes; Cole v. Sav. & L. Soc., 59 C. C. A. 593; Railway v. Columbia, 65 Kan. 390; Schaffer v. Railroad, 105 U. S. Sup. C. Rep. 249; Smart v. Kansas City, 91 Mo. App. 596; 13 Cyc., p. 319, title proximate cause of death. (4) The act, neglect or default must have been the proximate cause of the death, but the act, neglect or default is the proximate cause of death if it inflicts a fatal injury. Young v. Railway, 113 Mo. App. 636; Caudle v. Kirkbride, 117 Mo. App. 412. (5) The court erred in permitting the plaintiff to introduce in evidence the opinion of doctors as to the cause of the death of deceased. After fully describing the condition and disease of deceased it was for the jury to determine what was the cause of her death. The opinion testimony was incompetent and irrelevant. Glasgow v. Railroad, 191 Mo. 347. (6) That counsel for plaintiff herein was guilty of misconduct in the trial of this cause which was calculated to and apparently did prejudice the jury against the defendant, in interrupting opposite counsel in the cross-examination of one of plaintiff's most important witnesses. Hooper v. Tel. Co., 92 Mo. App. 304; Massengale v. Rice, 94 Mo. App. 430; Wendler v. People's H. F. Co., 165 Mo. 527.

*Charles M. Miller* and *Scarritt, Scarritt & Jones* for respondent.

(1) Not only was there strong, if not conclusive evidence, tending to show that plaintiff's injuries, received by being thrown from appellant's car, were the proximate cause of her death, but the evidence wholly fails to show any other cause of her death. As there was evidence tending to show that Mrs. Hartzler's death might reasonably and properly be attributed to the alleged injury, the question was properly submitted to the jury. Hanlon v. Railway, 104 Mo. 381; Seckinger v. Manufacturing Company, 129 Mo. 590; Walsh v. Railway, 102 Mo. 582; Beauchamp v. Saginaw, 50 Mich. 163; Sorenson v. Railroad, 36 Fed. 166; Railroad v. Buck, 97 Ind. 346; Thompson v. Railroad, 91 Ala. 496; Mount Carmel . Howell, 36 Ill. App. 68; s. c., 139 Ill. 91; Loovan v. Railroad, 57 N. Y. Super. Ct. 165; McDonald v. Railway, 118 S. W. Rep. 78. (2) The forfeit provided in the damage act is held to be both penal and compensatory. Philpott v. Railroad, 85 Mo. 167; King v. Railway, 98 Mo. 239.

BROADDUS, P. J.—This is a suit for damages instituted, under section 2864, Revised Statutes of Missouri, as amended by the Session Acts of 1905, by plaintiff to recover for the death of his wife, which occurred on December 16, 1905, as the alleged result of injuries received by deceased by being thrown from one of defendant's street cars in Kansas City, on October 25, 1905.

The allegation of the petition is that the injuries which caused the death of his wife were the result of defendant's negligence in starting the car while she was in the act of getting upon it, which caused her to fall with great force and violence onto the street.

The plaintiff's evidence tended to show that on the day in question plaintiff's wife and daughter Rose got off the defendant's car going west on Tenth street for

the purpose of transferring to the defendant's car at Troost to go south on Troost avenue; that they went to the southwest corner of Tenth street and Troost avenue where other persons were awaiting for the arrival of the car. When it came all the other persons got on the car, then Rose was the next to get on. Mrs. Hartzler came last at which time the car was standing still. Rose had just got onto the platform when the car started. As Mrs. Hartzler stepped on the rear step of the car and took hold of the front handhold of the vestibule, the car started forward, which caused her to lose her grip on the front handhold, but she caught the rear one. The conductor caught her by the arm but for some cause he let loose and she lost her balance and fell. There is ample evidence tending to show that plaintiff's wife's fall was caused by the negligent act of defendant's servants in prematurely starting the car while she was attempting to board it.

The deceased fell on her right side striking on her left knee. She went to her home and was suffering from pain in one of her knees and in her left side. Her daughter Rose put her to bed and applied liniment to her injuries. Doctor McCrea was called in at first, but on the third day Doctor Singleton was called, who continued to attend her until her death which occurred about six weeks thereafter. The deceased herself called at the office of Dr. Singleton on the third day after her injury and again in a few days thereafter. She went about her business and about the 30th of October she assisted in moving from her then residence to another; she handled heavy furniture, but seemed to have some trouble with one arm and shoulder. After that time the doctor saw her at her home. His description of her condition at the time he first saw her was that she was sore all over; that she complained particularly of pain in the left side and up the back and in the back of the neck. He gave her remedies to quiet her nerves and to relieve pain and also administered a tonic. On the 10th of Decem-

ber, the doctor discovered that she had pneumonia and her temperature stood at one hundred and four degrees.

An autopsy was held by Dr. Hall upon deceased's body and it was found that one of her ribs was fractured. He testified that he found her organs in normal position and they appeared to be within the normal limits of structure; that the cause of her death was croupous pneumonia; that both her lungs were the seat of the disease and its extent was considerable; that the thoracic cavity and pleural surfaces and surface of her lungs and surface of the chest were for the most part, in the posterior region, covered with inflammatory matter, pus fibrin threads, both in the condition of advanced disease; that the sixth rib had sustained a simple fracture in the middle; that this injury was right under the left nipple; that a simple fracture is when the ends of the fractured bones do not protrude through the coverings of the body; that the rib was broken entirely through.; and that the pleural membrane was between the rib, at the point where it was broken, and the lung.

The witness further stated that the disease was traumatic croupous pneumonia, a disease that follows an injury. The defendant objected to the introduction of this statement. The witness, resuming, stated that in his opinion the broken rib was the producing cause of the disease and that he discovered no other.

On cross-examination he was asked this question: "Now doctor, are you able to state to these gentlemen how many classes you divide pneumonia into? A. We might divide them into tuberculosis pneumonia, croupous pneumonia and catarrhal pneumonia; and then, of course, they may be subdivided into traumatic and non-traumatic varieties." We have not attempted to give in detail all the evidence of the learned doctor but only so much as has a tendency to show that plaintiff's death was the result of the injury she received when she fell

from the car. Further reference will be made to other testimony later on.

The defendant's evidence tended to show that when the car stopped to take on passengers at Tenth street and Troost avenue there were no women standing there. The conductor's statement is to the effect that several men got aboard, and seeing no other passengers he "gave the signal to go ahead as this young lady (Rose) stepped in the door of the car, and the car was about six feet beyond the stopping place, already in motion, . . . she looked around and says, 'Mama, hurry up and come on!' or something of that kind. I looked around and seen this woman grabbing hold of the back rail, stepping her foot upon the step, and I reached up with my hand and gave three bells—the emergency signal—and reached down with my right hand to catch hold of her, and before I could catch hold of the lady she dropped, and immediately the car responded to the signal and had already stopped within four or five feet of the lady who fell." Other evidence was corroborative of that of the conductor.

Defendant's evidence further tended to show that deceased's injuries were not the cause that produced the disease of pneumonia with which she died.

The plaintiff recovered a verdict for $4000. The defendant appealed from the judgment to the Supreme Court on constitutional grounds. That court held that there was no constitutional question involved and transferred the case to this court.

The defendant has assigned twenty-nine specific errors occurring at the trial.

The defendant offered a demurrer to plaintiff's case at the close of his evidence and at the close of all the evidence. In the first place it must be conceded that there was sufficient evidence to establish that the fall of the deceased from the car was the result of the negligence of defendant's conductor in starting while she

was in the act of getting on the car. We shall treat that as conclusively settled by the verdict of the jury.

It is however asserted that the injuries the deceased received from her fall were not the proximate cause of her death. The argument in support of this theory is, that the pneumonia was the proximate cause of death and the injury could only be the remote cause. That the broken rib was not discovered until the autopsy, which being neglected caused irritation, and coupled with the activity and indiscretion of plaintiff were the inducing causes of the disease that proved fatal. And furthermore no doctor stated that the injuries were the cause of the disease; that there was no evidence that pneumonia would naturally flow from or follow the injuries; and that the uncontradicted evidence is that if she had had traumatic pneumonia resulting from the injuries, the disease would have developed within a week or at most within a short time after the injuries.

Dr. Robinson, called by defendant, stated that traumatic pneumonia would develop generally in from three to five days, almost never beyond a week. Dr. Morrow, another witness, gave it as his opinion, that there was no relation between the injury and the cause of deceased's death.

The evidence of Dr. Singleton indicated that the deceased's lungs were affected during all the time he was treating her, and up to the 10th of December, at which time she had a severe chill, and he recognized that she had pneumonia. He further stated that previously he thought she had the pleurisy; that at the autopsy he ascertained she had a broken rib; that there was on the outside of the rib, between the skin and the rib, a little pus—broken down condition of the tissues; that in his opinion the disease was traumatic pneumonia, the result of a blow.

Notwithstanding the opinion of the medical experts introduced by defendant, the evidence of those testifying in behalf of plaintiff gave it as their opinion that

the disease was traumatic—the result of an injury. As there was no evidence of any other injury to deceased, it was left to the jury to infer from the testimony wheth-er or not her disease might be attributed to the injury in question. A similar question was before the Supreme Court. We quote from the syllabi: "When in an ac-tion for injuries caused by being struck by a stick thrown from a machine, there is evidence that plaintiff prior to the accident, had no symptoms of consump-tion and that this disease afterward attacked him, and several physicians testify that the disease could prob-ably be attributed to such injury, the question whether the blow was the proximate cause of the disease is prop-erly submitted to the jury." [Seckinger v. Mfg. Co., 129 Mo. 590.] And in a case where the party received an in-jury to his breast, and the physician who examined him testified to his injuries and of pneumonia arising from such injuries, the court held that the evidence was suffi-cient to authorize the finding of the jury that the plain-tiff's malady was caused by the injuries received in the accident. [Hanlon v. Mo. Pac. Ry. Co., 104 Mo. 381.]

Our attention is called to Foley v. M'cMahon, 114 Mo. App. 442, where it is said: "If an injury to one directly and naturally flows from the negligence of another, such negligence is the probable cause so as to render the other liable in an action for damages; but if the injury is ex-traordinary and exceptional, such as no man could foresee or provide against, no liability ensues against the other, though such injury would not have happened but for the negligence of the other." We have no fault to find with the conclusion of the court in that case for we believe it was right, but the general rule stated does not meet with our unqualified approval, and it has no application to this case. It is true no one could have foreseen that the injury received by deceased would re-sult in pneumonia and death, but it does not follow that defendant would not be liable. It could be fore-

140 App.—43

seen, however, if deceased fell from the moving car she would in all probability suffer an injury; the extent and all the consequences that might flow from it could not be foreseen, but for that reason it will not do to say that for such unforeseen consequences there could be no recovery. The defendant's confusion arises out of the effort to separate the consequences of the act from the act itself. The defendant's conductor could have foreseen that if he started the car while the deceased was attempting to board it she would probably fall and suffer an injury, the fullness of which no man could know. Yet his negligent act rendered his master liable for them all. And as the Supreme Court has decided that such consequences are the proximate result we do not see how defendant's position is to be sustained, unless it be for the reason that deceased, by her conduct in going around after she received the injury and the neglect of her physician to detect the broken rib, can be said to have been the intervening causes that directly induced pneumonia; and this was a question of fact which at defendant's instance the court submitted to the jury. And the finding has concluded that question in so far as this court is concerned.

The court over the objections of defendant admitted the evidence of plaintiff and his daughter as to the capacity of deceased to do housework. The statute, on which the action is based, is held to be compensatory as well as punitive and such evidence is admissible. [Philpott v. Railroad, 85 Mo. 164; King v. Railroad, 98 Mo. 235; Marsh v. Railroad, 104 Mo. App. 577.]

We will notice one of defendant's objections to the admission of evidence. Dr. Hull stated, as we have seen, that there was a relation between the injury deceased received and the disease with which she died. The doctor was permitted to answer without objection that the death was caused by pneumonia. He was then asked, what kind of pneumonia? He answered, croupous pneumonia. We believe the question and answer were com-

petent. While his testimony was within the range perhaps alone of medical experts, at the same time he was not answering a hypothetical question. He had the body before him and the interior of the thorax exposed and as a man learned in his profession, he ought to have been enabled, and we presume was, to perceive how the lungs were affected and what that affection was, therefore he was testifying as to what he saw and not as to his opinion upon any particular assumed fact.

We have examined other objections to the action of the court in admitting and refusing evidence tendered, and do not think they are of much importance. And the objections to certain instructions given at the instance of plaintiff are hypercritical at most. There are also objections to the conduct of plaintiff's counsel at the trial, which defendant claims was prejudicial. The judge who tried the case did not think it was, and we do not feel at liberty to disturb the judgment on that account. The case was important because of the questions involved, and the conduct of counsel exhibited some heat of temper, but upon the whole there was in fact not a very great departure from the rules of decorum that should be observed on such occasions. Finding no material error, the cause is affirmed. All concur.