DAVID HOLTZEN, Respondent, v. MISSOURI PACIFIC RAILWAY COMPANY, Appellant.

Kansas City Court of Appeals, November 6, 1911.

1. TRIAL PRACTICE: Hypothetical Question. Plaintiff, a passenger on defendant's train, was hurt in a collision. On the trial, a hypothetical question, reciting the collision and its violent incidents, was propounded to a physician over defendant's objection, and he was then asked what he would say was the cause of a condition described by the plaintiff. His answer was that the supposition would be that the injuries sustained in the collision would result in and be the cause of the condition referred to. The admission of the evidence was erroneous, and the error was not cured by other answers elicited from the same witness on cross-examination. A medical expert may testify that in his opinion a certain condition might, could or would have resulted from a certain cause, but he may not say that it did result therefrom. He may give his opinions, but he may not state his conclusions (except in insanity cases).

2.. ———: ———: Speculative Results of Injury. A hypothetical question reciting the collision and its incidents was propounded to a medical expert, and he was asked, over defendant's objection, what the probable effect of such a shock would be on the passenger's nervous system. He answered that he believed it would produce an irreparable shock. The admission of the evidence was erroneous. It is the function of an expert not to establish the existence of a condition but to explain its cause.

3. WITNESSES: Privileged Communication. Where plaintiff was taken to defendant's hospital and treated by defendant's surgeon, his objection to the evidence of such surgeon is properly sustained.

Appeal from Benton Circuit Court.—*Hon. C. A. Denton*, Judge.

REVERSED AND REMANDED.

*C. D. Corum* and *Roy D. Williams* for appellant.

*W. S. Jackson* and *James T. Montgomery* for respondent.

The hypothetical question put to Dr. Kieffer complained of by appellant was proper. It did not call for a conclusion but for an opinion of the witness. Thomas v. Street Ry. Co., 125 Mo. App. 131; Saeger v. Railroad, 131 Mo. App. 282; Mayes v. Street Ry., 121 Mo. App. 622; Hufford v. Street Ry. Co., 130 Mo. App. 638; Comas v. Roundtree Com. Co., 205 Mo. 367; Glasgow v. Street Ry. Co., 191 Mo. 347; Wood v. Railroad, 181 Mo. 448; Abstract of Record, page 74. But if the question was improper, the answer thereto was an opinion of the witness and not a conclusion and such answer cures any vice in the question. The answer being proper, the defendant was not injured by the question, even if improper. Thomas v. Street Ry. Co., 125 Mo. App. 135.

BROADDUS, P. J.—This is an action for damages for injuries sustained by plaintiff as the alleged result of defendant's negligence. On the 22d of June, 1910, plaintiff was a passenger on one of defendant's freight trains. He was a stock shipper accompanying a shipment of stock from Cole Camp, in Benton county, to St. Louis. At a point on the route between Kirkwood and Valley Park, another freight train running in the same direction as that on which plaintiff was riding collided with the caboose in which plaintiff was being carried. The force of the collision was so great that the caboose in which plaintiff was riding was hurled on top of a flat car immediately in front of it, from which it toppled over and rolled down an embankment twenty or thirty feet high.

Plaintiff's evidence tends to show that he was taken out of the caboose in an unconscious condition and so remained for some time thereafter, and that

he received a cut on the head which required thirty-three stitches to sew up; that he was bruised about the shoulder, his back severely wrenched, his bowels injured, was wounded by a nail in the hip, and otherwise received numerous bruises of the skin.

Plaintiff was put upon a relief train and taken to St. Louis and placed in defendant's hospital where he remained for about sixteen days, during which time he was confined to his bed until on the fourteenth day, when he went out for the purpose of buying a suit of clothes. On the sixteenth day he went to his home in Cole Camp, but afterwards returned to St. Louis to be treated by Doctor Kieffer for the injury to his bowels. The evidence tends to show that since his injury plaintiff has not been able to sleep soundly; that he turns over in the bed with difficulty and suffering; that since the injury he has not been able to ride on a horse and that he cannot without suffering pain ride about in the prosecution of his business; that before his injury he was an active and strong man; and that such injuries in all probability will be permanent. There was evidence tending to show to the contrary that plaintiff was enabled to carry on his business as usual, and that his injuries were not of a permanent character, especially that to the bowels.

In the progess of the trial plaintiff propounded to his expert witness the following question: "Now, doctor, take a man fifty-seven years old, strong physically, and let him be riding on a caboose attached to a freight train, going along the road at a moderate speed, and another freight train, having an engine, hit the caboose and knock it up on flat cars, and turn it over and down an embankment thirty or forty feet, demolishing the car, with this man inside there with chains and such things as they usually carry in a caboose, and he is rendered unconscious, and cut in the head, and punctured in the stern with a nail and

he is taken to the hospital the same day and in a day or two passes blood, what would you say was the cause of the passage of the blood from his bowels—and his back sprained?" On objection being made that the question was not based on all the facts plaintiff added: "That he complained of great pain in the right side of the stomach and bowels." Defendant objected to the question on the ground that it put the witness in the attitude of deciding the case. The objection was overruled and the witness answered as follows: "That question is somewhat hard to answer; of course the supposition would be, that if a man had been through a mill and passed blood, that going through the mill was the cause of the passage of the blood; I could say that the supposition would be that the injuries he sustained in the collision would result in the passage of blood—be the cause of the passage of the blood." A question was propunded to Doctor Haynes based upon the same supposable facts, as follows: "What would be the probable effect of that sort of a shock on the nervous system?" The question was objected to because it permitted the doctor to indulge in the realm of speculation; the probable effect might be a great many things, and because it was irrelevant and immaterial. His answer was: "Well, I believe it would produce an irreparable shock to the nervous system."

Dr. Alexander, the hospital physician and surgeon who attended on plaintiff, was introduced by defendant and was asked if plaintiff made any complaint to him at any time while he was in the hospital, about having any trouble of any kind with his bowels. Plaintiff objected to the competency of the witness because of the confidential relation of doctor and patient. The objection was sustained. The finding and judgment were for the plaintiff and his damages assessed at five thousand dollars, from which defendant appealed.

The appellant has assigned as ground for reversal: First, that the judgment is excessive; second, that the court erred in the admission and rejection of evidence offered and admitted on the trial; third, in the giving and refusing of instructions. As to the admission of incompetent evidence the most important is that relating to the expert evidence of Doctor Kieffer. This question has been frequently before the Supreme and appellate courts of the state and as there appears to be some confusion among the lawyers as to just what has been decided it becomes necessary to review to some extent the decisions on the subject. It is held in a case, after stating the facts in proof, where the question was, "did such condition in your opinion result from that shock?" The answer was, "We might suppose that it resulted from the shock;" that both the question and answer were incompetent. [Thomas v. Met. Street Ry. Co., 125 Mo. App. 131.] The ruling followed that in Glasgow v. Railroad, 191 Mo. 347; and Taylor v. Railroad, 185 Mo. 239. In the latter case the question after stating the injury was: "What was probably the cause of her condition?" The answer was: "The injury she received on the street car." The court held that the answer was not the expression of an opinion but a conclusion of the witness. Judge MARSHALL, who wrote the opinion, undertook to lay down a general rule to govern in such cases and said: "It would have been proper to state to the plaintiff's expert witness the nature and extent of the injuries received by plaintiff as they appeared at the time of the accident, and then to ask them whether or not in their opinion such injuries might, could or would result in paralysis." And further that: "There is an essential difference between permitting an expert to give an opinion and permitting him to draw a conclusion." In Roscoe v. Met. Street Ry. Co., 202 Mo. l. c. 594, after stating the injury the expert was asked what he "would at-

tribute the cause of the pains in his head and back
and his inability to sleep, as he was formerly able to
do?" The answer was: "Why, I should say it was
due to the injury which he received at the time."
The court held that the question called for a conclu-
sion and the answer was also a conclusion and not
the expression of an opinion. The court cites for
authority, Taylor v. Railroad, supra. In Lutz v.
Met. Street Railway, 123 Mo. App. 499, was a similar
case in which the court predicated its ruling on Taylor
v. Railroad, supra, and Glasgow v. Railroad, supra.
And so was the holding in Spaulding v. Edina, 122 Mo.
App. 64. And in State v. Hyde, 136 S. W. pp. 331-
332, the court quotes with approval Taylor v. Rail-
road. We are unable to find a single instance since
the last named case where under the circumstances
the rule is different. But there is another class of
cases where an expert or even a non-expert witness
may state his conclusion, viz: in cases of insanity.
[Wood v. Railway, 181 Mo. l. c. 451; State v. Hyde,
supra.] But it is contended that the error was not
prejudicial because the witness on cross-examination
stated that if plaintiff did not pass blood from his
bowels when he was in the hospital but some weeks
later, he would not attribute the cause of his condi-
tion to the injury. This, in our opinion, did not have
the effect of neutralizing the effect of the former
question and answer as it referred to a different time
and the answer was from defendant's point of view
altogether and was based upon a state of facts dif-
ferent from that made by plaintiff and upon which
the hypothetical question was asked. And we be-
lieve the question and answer of Dr. Haynes was
also error. He was not asked to what cause he would
attribute the condition of the plaintiff, but what con-
dition the injury would produce. We know of no rule
that would justify such a course of examination.
The object in such cases is not to show by expert wit-

nesses a condition, but to account for such, that is, to ascertain the cause that produced a condition.

We do not think there was any error in sustaining the objection to the testimony of Dr. Alexander, as he sustained the confidential relation of doctor and patient. The ruling is justified by the holding in Smart v. Kansas City, 208 Mo. 162.

The objection to instruction No. 1 given for plaintiff, is that it is not supported by the evidence, but we think otherwise. As the case is to be reversed we do not deem it necessary to pass upon the question as to the excessive verdict. Reversed and remanded. All concur.