JACOB J. WESNER, Respondent, v. ST. LOUIS &
SAN FRANCISCO RAILROAD COMPANY,
Appellant.

**Kansas City Court of Appeals, February 2, 1914.**

1. **NEGLIGENCE: Personal Injuries: Railroads: Defects.** The
plaintiff sued to recover for personal injuries sustained while
working as a carpenter in the defendant's freight depot. He
and a fellow workman were directed to tear out a partition,
which protected a heavy sliding door on the inside of the bulid-
ing. While plaintiff had his back turned carrying away some
of the lumber the door, which was in a defective condition,
fell on him and he was injured. *Held*, that the demurrer to the
evidence was properly overruled.

2. ——: ——: ——: ——. Where the work the servant
is engaged to perform is to make safe an unsafe place, the
master cannot be held liable for an injury caused by the very
defect and danger the servant is employed to remedy. But
where the injury resulted, not from an inherent danger, but
from a defect in the place of work due to the negligence of the
master, the latter is liable.

3. **EVIDENCE: Invasion of the Province of the Jury.** A question
which calls for the opinion of a witness on one of the ultimate
facts in controversy, which the triers of fact alone were in-
vested by law with authority to determine, if admitted, is
erroneous.

4. ——: **Petition.** It is error for the court to permit the plain-
tiff over the objections of defendant to introduce in evidence
the petition on which the case was tried. The petition being
a part of the record was already before the court without being
introduced in evidence.

Appeal from Jackson Circuit Court.—*Hon. James H.
Slover*, Judge.

REVERSED AND REMANDED.

*W. F. Evans* and *Cowherd, Ingraham, Durham &
Morse* for appellant.

(1) Plaintiff is not entitled to recover, because
he was engaged in repair work, making an unsafe place

safe, and therefore assumed the risk.    Henson v. Packing Co., 113 Mo. App. 618; Nash v. Brick Co., 109 Mo. App. 605; Bloomfield v. Construction Co., 118 Mo. App. 258; Armour v. Hahn, 111 U. S. 313; Wilson v. Railroad, 122 Mo. App. 667; Bennet v. Lime Co., 146 Mo. App. 572.    (2)    The trial court committed reversible error when it permitted plaintiff, over defendant's objection, to introduce his petition in evidence, and permitted plaintiff to read said petition to the jury as part of the evidence.    Wrightsman v. Herriens, 130 Mo. App. 266; Stevens v. Crane, 116 Mo. 413; Kirkpatrick v. Railroad, 211 Mo. 80; Jordan v. Transit Co., 202 Mo. 428; Pandjiris v. Hartman, 196 Mo. 539, 547; Elliott v. Sheppard, 179 Mo. 382.

*C. W. Prince* and *E. A. Harris* for respondent.

JOHNSON, J.—Plaintiff sustained personal injuries while in the service of defendant and sued to recover damages on the ground that the injury was caused by negligence of defendant in failing to exercise reasonable care to furnish him a reasonably safe place in which to work.    The answer is a general denial and pleas of assumed risk and contributory negligence.

The cause is here on the appeal of defendant from a judgment of $4000, recovered by plaintiff in the circuit court.    We are asked to reverse the judgment on the ground that error was committed in the refusal of defendant's demurrer to the evidence.    Counsel for defendant argue, first, that plaintiff's evidence shows he was injured while engaged in the work of making safe an unsafe place and, therefore, fell a victim to one of the incidental risks of his employment and, second, that his own negligence caused or contributed to his injury.    At the time of his injury, February 2, 1910, plaintiff, who was an experienced carpenter, was engaged with other artisans in making certain alterations and repairs at defendant's freight depot in Kan-

sas City. He had worked for many years as a car repairer and had been so employed by defendant but on the day of his injury had been ordered to work in the freight depot where some new scales were being installed and the floor was being repaired and raised to a higher level. The men worked under the supervision and direction of foreman and at first plaintiff worked at repairing the floor. Later the foreman of that work ordered him to report to the foreman in charge of the work of installing the scales and that foreman ordered him and another carpenter to tear out and remove a "protection sheet" to one of the sliding outer doors of the building in order to make room for the scales. Each side of the building, which extended north and south, had seven or eight wide doorways and the scales were being installed near the middle doorway. A heavy wooden door suspended from a rail was at each doorway and was so constructed that it could be slid back and forth along the rail. To open the doorway the door would be pushed northward along the rail which was inside and parallel to the east wall. To permit the free movement of the door and to protect freight placed near-by from being struck by it, a partition, or protection sheet as it is called in the evidence, had been built in front of the wall and parallel thereto, so that when the door was pushed back from the doorway it hung between the wall and the partition which was only five or six inches from the wall. The partition was made of boards two inches thick, six or eight inches wide, and twelve feet long, which were nailed at the bottom to a timber attached to the floor and at the top to another timber which was set against the wall and above the rail from which the door was suspended on rollers. The door was ten feet high, eight feet wide and weighed eight hundred pounds.

While plaintiff and his fellow workman were tearing away the partition and removing the planks to a

place designated by the foreman, the door stood about one-third open. One of its rollers was defective and had been for a long time, so that it was not suspended from the rail but was supported by the floor and kept from falling inward by the partition. The men did not know of the defect which was hidden behind the partition and the foreman did not warn them of it. They did the work in the manner called for by the foreman's order, and under his supervision, and when the last board of the partition was being torn out by plaintiff's fellow workman, the door, on account of the defect, fell inward and struck plaintiff who was engaged in carrying the boards to the place where he had been told to take them.

In support of the contention that the injury of plaintiff was due to one of the natural risks of the employment, defendant endeavored to bring the case within the operation of the rule that where the work the servant is engaged to perform is to make safe an unsafe place, the master cannot be held liable for an injury caused by the very defect and danger the servant is employed to remedy. As we said in Henson v. Packing Co., 113 Mo. App. 621: "When the work in hand is dangerous for the reason that it is to secure and make safe an unsafe place, the rule, as generally applied, that the master must furnish the servant a safe place in which to work can have no application. To say that a man can have a safe place to work in an unsafe place is an absurdity."

This rule has been spoken of in some of the cases as an exception to the general common law rule which enjoins on the master the duty of exercising reasonable care to furnish his servant a reasonably safe place in which to work, as has also the further rule which exempts a master from liability for an injury to his servant caused by changes in the place the servant is employed to make. [Nash v. Brick Co., 109 Mo. App. 600.]

The writer regards as inaccurate and illogical the view that the duty of the master to exercise reasonable care to furnish his servant a reasonably safe place is not invariable but is subject to exceptions. That duty still obtains where the employment is to make safe an unsafe place, or to change the conditions of the place, but the dangers caused by defects the servant is employed to remedy, or by the changes in the conditions of the place he is employed to make, are to be regarded as natural and inherent dangers of the employment to which the master's general duty is not referable and which, of necessity, must and should be accepted by the servant at his own peril and as one of the risks he voluntarily has chosen to assume.

The evidence of plaintiff presents a case of an injury resulting not from an inherent danger but from a defect in the mechanism for suspending the door from the rail. Plaintiff was not employed to make safe an unsafe place nor to make any changes that could have any proper relation to the stability of the door. The partition was not designed or intended to serve as a support for the door under any circumstances and the fact that it had become the only barrier to the fall of the door was due entirely to a defect which was known or should have been known to the master, was unknown to the servant, and was one the servant was not employed by the master to remedy. In other words it was a defect in the place of work due to the negligence of the master and, therefore, was one for which, in its injurious consequences to the servant, the master should be held to account.

Plaintiff was working at fragmentary tasks under the control and immediate supervision of different and successive foremen or vice principals who, respectively, were directing different activities conducted in the same room. He was told by his last foreman to tear out that partition, not to rehang the door nor inspect it for defects. It was his duty to obey his master's

orders and not take up time going beyond their scope to look for possible dangers. [Gibson v. Bridge Co., 112 Mo. App. 594; Corby v. Telephone Co., 231 Mo. 417.] He had a right to rely on the proper performance of the duty the law imposed on his master for his benefit and in sending him into a place of unnecessary danger, without warning, the foreman was guilty of negligence for which defendant must answer. There is no ground in the evidence of plaintiff for the conclusion that his injury was due to an assumed risk and from what we have said it is apparent that the defense of contributory negligence involves issues of fact which the court did not err in sending to the jury. The demurrer to the evidence was properly refused.

A physician introduced as a witness by plaintiff was asked on redirect examination: "Q. State whether or not the condition which you found existing in Mr. Wesner is the natural result from a heavy door weighing in the region of six to eight hundred pounds, if it falls on him while in a stooping position, say if he would fall over a board that he was carrying or attempting to carry at the time?" The question was objected to on the ground, among others, of invading the province of the jury. The objection was overruled and the witness answered, "Yes, sir. Q. That is your opinion, is it, Doctor, that it could? A. Yes, sir."

The question unmistakably called for the opinion of the witness on one of the ultimate facts in controversy which the triers of fact alone were invested by law with authority to determine. As was said in the recent case of Castanie v. Railroad, 249 Mo. l. c. 196: "It would have been entirely proper for the question under review to have been put in a form which would have permitted an answer by the physician, that the injuries might or could have been produced by such a fall as that described in the hypothetical question. But it should not have been framed (as it was) so as to elicit

an answer that the supposed fall *did* cause the injury, because that was a 'fact to be proved,' and which it was the duty of the jury to determine in view of all the evidence bearing on that issue. The answer of the physician undertook to relieve them of that task. The objection to the form of the hypothetical question should have been sustained. The answer of the witness was incompetent and necessarily prejudicial. It left nothing for the jury to find if they believed the statement of the witness as to the cause of the injuries sustained by plaintiff. [Atkinson v. School of Osteopathy, 240 Mo. l. c. 355; Smart v. Kansas City, 208 Mo. l. c. 202; Taylor v. Railroad, 185 Mo. l. c. 256, and cases cited.]''

The question under consideration was so worded as to call for the answer that plaintiff's injuries, in fact, were caused by the blow he received from the falling door and the pernicious effect of so clear an invasion of the province of the jury could not be considered as being removed by the subsequent question which merely told the jury what they already knew, viz., that the witness was giving opinion testimony. The vice of the first question consisted in calling for the opinion that the negligence of defendant did produce a certain result instead of the opinion that it might or could have produced such result.

Further we think the court erred in permitting plaintiff, over the objections of defendant to introduce in evidence the petition on which the case was tried. The petition being a part of the record was already before the court without being introduced in evidence. The only purpose plaintiff could have had in offering it was the improper purpose of impressing the jury with the belief that its allegations, of themselves, were endowed with probative force and value. In the case of Manor v. Board of Commissioners, 137 Ind. 367, 34 N. E. 959, cited by plaintiff, there was some question of whether or not the paper introduced was a part of

the record proper and the court held that it was, and being such, there was no error in formally introducing it in evidence. But in that case there was lacking the purpose and effect of giving a false evidentiary value to a pleading that necessarily has no such value. The advantage thus given plaintiff before the jury was one to which he was not entitled and we hold it was error to allow the petition to be introduced in evidence. For these errors the judgment is reversed and the cause remanded. All concur.