Thomas v. Railroad.

EDITH THOMAS, Minor, by A. W. Greer, Public Guardian, Respondent, v. ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY, Appellant.

Springfield Court of Appeals, January 30, 1915.

1. DAMAGES: Permanent Injuries: Award Not Excessive When. Action against a railroad for injuries caused by alleged negligence of defendant's servant in assisting plaintiff, a twelve-year-old girl, to alight from defendant's train. The injury, a sprained ankle, culminated in a diseased condition of the bones of the leg which permanently weakened it and left it deformed. An award of $4000 considered not excessive.

2. INJURIES: Various Causes of: Liability as to One, not as to Others: What Must be Shown. Where an injury may have resulted from one of two or more causes for one of which defendant is liable but not for the others, it devolves on plaintiff to prove with reasonable certainty that the injury resulted from the cause for which defendant is liable.

3. DAMAGES: Injuries: Resulting Effects: Evidence. Evidence considered sufficient to warrant a finding that the sprained ankle which plaintiff suffered by alleged negligence of defendant resulted in tuberculosis of plaintiff's leg without any intervening, independent cause.

4. ———: ———: Tubercular Germs: Proximate Cause. Plaintiff suffered a sprained ankle as a result of defendant's negligence. Tubercular germs attacked the spot thus weakened producing permanent damage. The disease germs were not the proximate cause of the damage.

5. ———: Defenses: Mitigation: What Not. A predisposition on the part of plaintiff to tuberculosis because of which her injuries were more severe than would be reasonably expected, is not a defense or a mitigation of damages.

6. EVIDENCE: Previous Admission: Harmless Error. Where a physician had previously answered a certain question without objection being made if error was committed later in allowing him to answer the same question over objection that it called for a conclusion and invaded the province of the jury, such error was harmless.

7. ———: Question Calling for Conclusion: Question Set out and Held Not Objectionable. A question asked of the attending physician concerning plaintiff's injury is set out and con-

sidered not objectionable as calling for a conclusion and invading the province of the jury.

8. ————: **Opinion Evidence: What Not.** Action against railroad for personal injuries received by a girl, twelve years of age, because of negligence of defendant's servant in assisting her to alight from the platform of defendant's train. The injury received was a sprained ankle which later developed into tuberculosis of the knee. The attending physician was asked if such an injury, though at first thought to be slight, might result in the disease which later developed. The question was not objectionable as calling for a conclusion which invaded the province of the jury.

9. **ACTIONS: Brought by Curator: In Infant's Name.** In a suit brought by a curator such curator does not sue to recover in his own name as such, but the suit is in the name of the infant and the recovery is by the infant.

10. **INFANTS: May Sue How: Statute.** Suits by infants may be commenced and prosecuted by guardian or curator or by next friend. [Sec. 1739, R. S. 1909.]

11. **CURATORS: Appointment by Probate Court: Cannot be Attacked Collaterally.** Where a probate court has appointed a curator for an infant, the power and jurisdiction of such court to do so cannot be questioned in a purely collateral proceeding.

12. **INFANTS: Judgment in Favor of: Not Disturbed by Appellate Court Because Appearance Was by Attorney.** By statute appellate courts are forbidden to stay, reverse or impair judgments in favor of infants merely because such infant appeared by attorney only.

13. **INFANTS: Judgments in Favor of: Not Disturbed When.** Where judgment goes in favor of an infant, even though the appearance was by an unauthorized curator, such judgment will not be disturbed by appellate courts.

Appeal from Butler County Circuit Court.—*Hon. J. P. Foard,* Judge.

Affirmed.

*J. F. Green* and *N. A. Mozley* for appellant.

(1) The petition filed in the probate court did not state facts sufficient to give said court jurisdiction to appoint A. W. Greer, the public administrator of said

county, guardian of the estate of Edith Thomas, and the order made by said court appointing said guardian is void, hence said guardian had no authority to maintain this suit. R. S. 1909, sec. 302; Nelson v. Troll, 173 Mo. App. 51, 156 S. W. 16; Richardson v. Busch, 198 Mo. 174, 95 S. W. 894; De La Vergne v. Richardson, 198 Mo. 189, 95 S. W. 898; Hollingsworth v. Jeffries, 121 Mo. App. 660, 97 S. W. 632. (2) The injury complained of was not the proximate result of the alleged wrongful act of defendant. Logan v. Railroad, 96 Mo. App. 461, 70 S. W. 734; Diel v. City of Ferguson, 158 Mo. App. 286, 138 S. W. 544; Cole v. C. S. & L. Society, 124 Fed. 113; Saxton v. Railroad, 98 Mo. App. 494, 72 S. W. 717; Wilson v. Railroad, 129 Mo. App. 658, 108 S. W. 590; Railroad v. Lowe (Tex.), 86 S. W. 1059; 1 White Personal Injuries, secs. 25, 29; Atkinson v. Railroad, 90 Mo. App. 489; Railroad v. Calhoun, 213 U. S. 1, 53 L. Ed. 671; Scheffer v. Railroad, 105 U. S. 249, 26 L. Ed. 1070; Brubaker v. K. C. E. L. Co., 130 Mo. App. 439, 110 S. W. 12. (3) Defendant's objection to the hypothetical questions propounded to Doctors McGee and Seybold, as expert witnesses, should have been sustained, and the answers to said questions should have been stricken out. Thomas v. Railroad, 125 Mo. App. 131, 100 S. W. 1121; Taylor v. Railroad, 185 Mo. 239, 84 S. W. 873; Glasgow v. Railroad, 191 Mo. 347, 89 S. W. 915; Roscoe v. Railroad, 202 Mo. 576, 101 S. W. 32; Wesner v. Railroad, 177 Mo. App. 117, 163 S. W. 298; Holtzen v. Railroad, 159 Mo. App. 370, 140 S. W. 767. (4) There were several causes which might have produced the injury complained of, for one of which only, defendant was in any manner responsible. It devolved upon the plaintiff to show to a reasonable certainty that the cause for which the defendant is alleged to have been liable produced the injury. This plaintiff failed to do, and defendant's demurrer should have been given. Warner v. Railroad, 178 Mo. 125, 77 S. W. 67; Smart v. Kansas City, 91 Mo. App. 586;

Hodges v. Railroad, 135 Mo. App. 683, 116 S. W. 1131; Beebe v. Transit Co., 206 Mo. 419, 103 S. W. 1019; Kane v. Railroad, 251 Mo. 13, 157 S. W. 644; Byerley v. Light Co., 130 Mo. App. 593, 109 S. W. 1065; Harper v. Terminal Co., 187 Mo. 575, 86 S. W. 89; Plefka v. Knapp, Stout Co., 145 Mo. 316, 46 S. W. 974.

*L. Henson* for respondent.

(1) The appointment of a guardian or curator of a minor by the probate court cannot be collaterally attacked and the findings of the court are conclusive as to all jurisdictional matters. The suit was properly brought in the name of the minor by A. W. Greer, Public Guardian. Smith v. Young, 136 Mo. App. 65; Webb v. Hayden, 166 Mo. 50; Judson v. Walker, 155 Mo. 180. (2) This cause was fairly submitted to the jury upon the facts, and where no question of law is raised by instructions in the trial court, the appellate court will not disturb the verdict of the jury if there is any evidence upon which to base it. Costly v. Seward, 93 Mo. App. 108; Wagner v. Rothenbuecher, 17 Mo. 232. (3) The damages awarded by the jury herein are not excessive. Sampson v. Railroad, 156 Mo. App. 419; Moudy v. St. Louis D. B. & P. Co., 149 Mo. App. 413; Saller v. Friedman Bros. Shoe Co., 130 Mo. App. 712; Dean v. Railroad, 229 Mo. 425; Richardson v. Railroad, 223 Mo. 325.

STURGIS, J.—Plaintiff, a girl about twelve years of age, brings this suit by her curator, designated in the record as guardian, for personal injuries alleged to have been inflicted by reason of defendant's negligence in the manner of assisting or causing her to alight from defendant's passenger train at Williamsville, Missouri. The injury is alleged and by the evidence introduced by plaintiff shown to have been caused in this manner: The plaintiff with her mother and other children of the family went from their

country home to Williamsville, Missouri, to attend a
Fourth of July celebration in 1913, and for that pur-
pose took passage on the passenger train in question.
There were a considerable number of passengers get-
ting off at that place and when the train stopped, plain-
tiff, with her mother, went forward in the chair car,
where they were riding, to the platform between the
coaches in order to descend the car steps to the sta-
tion platform. The defendant's brakeman was at the
foot of the steps assisting the passengers, especially
women and children, to alight. The passageway was
somewhat congested and when the plaintiff had passed
out of the coach and reached the top of the steps lead-
ing down to the platform, the brakeman reached up,
took plaintiff by the hand and, instead of assisting her
to walk down the steps, said: "Jump way out, little
girl." The plaintiff obeyed and jumped from the plat-
form of the car to the station platform, a distance of
four or five feet. Plaintiff says the brakeman, when he
told her to jump, pulled or jerked her somewhat for-
ward and then let go of her before she alighted. The
result was that plaintiff sprained her ankle. She
walked away, limping somewhat, complained of her
ankle hurting her and while staying at the picnic sev-
eral hours and moving around she was limping and
complaining of her ankle. There was no external in-
jury and the injury was not thought to be serious and
on plaintiff's return home she was kept quiet and some
home remedies applied. The ankle became inflamed
and swollen and this gradually extended towards the
knee. When medical aid was summoned in a few
days, the physician thought it was nothing more than
a severe sprain. It soon developed that the periosteum
of the ankle and leg was affected and the injury de-
veloped into a malignant, painful and dangerous con-
dition, affecting the leg from the knee down. The leg
had to be lanced a number of times, discharging
large amounts of pus, and the bone became diseased

and sloughed off and at the time of the trial, more than seven months after the injury, the leg, far from being healed, was diseased, deformed and permanently weakened. The jury returned a verdict for $4000, and the above details of the injury are given in answer to defendant's contention that the verdict is excessive. We do not think so.

The plaintiff requested no instructions and none were given except those requested by the defendant. All the instructions requested by defendant were given, except a demurrer to the evidence.

The demurrer raises the point that where the injury complained of may have resulted from one of two or more causes, for one of which defendant is liable but not for the others, it devolves on the plaintiff to prove with reasonable certainty that the injury did in fact result from that cause for which the defendant is liable. [Warner v. Railroad, 178 Mo. 125, 77 S. W. 67; Beebe v. Transit Co., 206 Mo. 419, 103 S. W. 1019.] Defendant claims that plaintiff's evidence does not measure up to this requirement of the law because it was shown that plaintiff had received other injuries to this same leg and the evidence tended to show that the real and what defendant denominates the proximate cause of the injury is tuberculosis. The argument is that as tuberculosis is a germ disease and may result from a variety of causes, that is, the germs, or more learnedly the tubercle bacilli, may enter infected tissues from a variety of sources and causes and under a variety of circumstances, it is purely speculative to say that the tubercular condition of the plaintiff's leg was caused by the sprain. In answer to this we find that the three learned medical men who examined plaintiff's diseased leg do not agree that the conditions they found were tubercular at all. They more nearly agree that if the disease is tuberculosis of the bone and tissues surrounding the same, that such condition could be caused by a severe sprain of the

ankle and this without any abrasion of the skin or external injury, and that such condition would develop several days after the sprain.  The scientific explanation attempted is that tubercular germs are in the air and in all human and animal bodies at all times in greater or less numbers.   Whenever any portion of the body becomes injured, weakened or diseased, these soldiers of destruction make an attack or "drive" on the weakened spot and in proportion as nature is not able to resist the same destruction ensues.   In this way a sprain causing more or less laceration and breaking of the tissues and congested and impaired circulation offers a weakened point for attack.   It is sufficient to sustain the verdict that the . evidence showed that in this particular case the plaintiff's ankle was sprained and that swelling and abscesses and sloughing off of the bone did follow in apparently natural sequence and without any known intervening independent cause and that from their learning and experience some, at least, of the medical men testified that in their opinion these later symptoms could and did grow out of and result from the sprain of the ankle. [MacDonald v. Railroad, 219 Mo. 468, 481, 118 S. W. 78; Seckinger v. Manufacturing Co., 129 Mo. 590, 603, 31 S. W. 957; Poumeroule v. Cable Co., 167 Mo. App. 533, 538, 152 S. W. 114.]   One of the physicians mentioned as giving this evidence is the one who treated the injury from very near the beginning and admitted that in the beginning he thought there was nothing more than a sprain.   If the defendant means to have us do so, we decline to hold the germs responsible for this injury on the ground that they were the proximate cause thereof and that the sprain, caused by defendant's negligence, was only the remote cause when such sprain produced and brought about the conditions under which the germs did their work.   [Seckinger v. Manufacturing Co., 129 Mo. l. c. 604, 31 S. W. 957; Arnold v. Maryville, 110 Mo. App. 254, 260, 85 S. W. 107.]

Granting that the later developed condition of the leg was tubercular, yet, if this tubercular injury followed from and developed out of the sprain of plaintiff's ankle as the exciting cause, then the fact that plaintiff was predisposed to tuberculosis, as stated by one witness, or that her physical condition was such as to yield more readily to the ravages of tubercular germs and thereby her injuries resulting from this sprain were greater or different in degree than is usual or to be expected from such cause furnishes neither a defense nor mitigation of damages. [Patterson v. Traction Co., 178 Mo. App. 250, 265, 163 S. W. 955, and cases there cited; Neff v. City of Cameron, 213 Mo. 350, 356, 111 S. W. 1139.] It was shown, however, that while tuberculosis is hereditary, plaintiff's family and ancestors were not thus afflicted so far as known. The former injury on which defendant lays some stress occurred some weeks previous to the sprain in question and was only a slight flesh wound near the knee, caused by being cut with a piece of glass. Plaintiff's evidence shows that this injury healed readily and the location of this injury, as well as the evidence concerning its nature and cause, convinced the jury, as it does us, that the injuries sued for here did not result from that cause. The defendant's evidence disproves any injury to plaintiff at the time and in the manner detailed by her. This, however, was clearly a question for the jury. We also think the evidence is clearly sufficient to justify the finding that the injuries sued for were caused and grew out of the sprain of plaintiff's ankle. [Hartzler v. Railway Co., 140 Mo. App. 665, 672, 126 S. W. 760.]

The defendant also complains that certain questions asked and answered by the medical witnesses called for conclusions of the witnesses invading the province of the jury under the rule announced in Holtzen v. Railroad, 159 Mo. App. 370, 140 S. W. 767; Roscoe v. Street Ry. Co., 202 Mo. l. c. 594, 101 S. W. 32;

Wesner v. Railroad, 177 Mo. App. 117, 163 S. W. 298. The questions and answers complained of are these: "Q. Did the condition of her leg at that time and the present condition of it develop from what you considered at first to be a sprained ankle? A. Yes, sir. . . . Q. Now, doctor, I will ask you if it is likely that an injury might occur that would produce a condition that was developed in this leg, and at the time it was produced that it would not follow would be serious, and if it was likely that an injury though thought to be slight in the beginning, would develop into this kind of an injury later on? A. Yes, sir; that is true." The first question was propounded to Dr. McGee, who treated the injuries in question and the question can hardly be called hypothetical. [Hartzler v. Railway Co., 140 Mo. App. 665, 126 S. W. 760.] Moreover, he had previously testified, without objection: "Q. Well, doctor, what did you find wrong? A. Well, in a few days—I think maybe about the second or third day—a severe inflammation set up in the leg; started in the neighborhood of the joint and extended up the leg. I taken it to be periostitis, and the abscess developed. Q. From what was that caused, doctor? A. Well, it was caused from the sprain." The second question mentioned is clearly not subject to the criticism offered.

It is next contended that the guardian bringing this suit for plaintiff was without authority to do so. It appears that both of plaintiff's parents are living and that she was possessed of no property or estate other than this claim for personal injuries. The parents presented a motion in the probate court to have a guardian, or more properly a curator, appointed for the purpose of bringing this suit and waived their own rights to such appointment. The probate court made an order appointing the present guardian. In doing so the court doubtless acted under section 302 and 464, Revised Statutes 1909. The defendant questions the power of the probate court to make this order on

these facts and the consequent rights of the guardian to maintain this suit.

It should be noted that in bringing a suit by a curator, such curator does not sue to recover in his own name as such, but the suit is in the name of the infant and the recovery is by the infant. In this respect a curator differs from an administrator. [Webb v. Hayden, 166 Mo. l. c. 50, 65 S. W. 760; Judson v. Walker, 155 Mo. l. c. 179, 55 S. W. 1083.] Our statute, section 1739, provides that suits by infants may be commenced and prosecuted by guardian or curator, or by next friend. Without going into the question raised, we must deny the effect of defendant's contention for two reasons: (1) The power and jurisdiction of probate courts in appointing curators, where such courts have acted in doing so, cannot be questioned in a purely collateral proceeding. [Green v. Tittman, 124 Mo. 372, 375, 27 S. W. 391; Vermillion v. Le Clare, 89 Mo. App. 55, 61; Richardson v. Busch, 198 Mo. 174, 180, 95 S. W. 894.] (2) There has been a statute in force in this State for many years forbidding appellate courts to stay, reverse, or impair judgments *in favor of* infants merely because the infant appeared in the suit by attorney only. It was held in Robinson v. Hood, 67 Mo. 660, that: ''The statute would seem to be broad enough to reach a case of this sort, where the judgment goes in favor of the infant, even if the appearance by curator was unauthorized.'' Holton v. Towner, 81 Mo. 360, 367, is to the same effect.

The judgment will, therefore, be affirmed.

*Robertson, P. J.,* and *Farrington, J.,* concur.