JOHN W. BOGGESS, Administrator of the Estate of PHILLIP BOGGESS, Deceased, Respondent, v. THE KANSAS CITY RAILWAYS COMPANY, Appellant.

Kansas City Court of Appeals, March 7, 1921.

1. EVIDENCE: Inferences: Ultimate Fact May be Proved by Direct or Circumstantial Evidence, but Must Appear as a Direct Inference from Other Facts. The existence of an ultimate fact may be proved, either by direct or circumstantial evidence, but such fact must appear as a direct and reasonable inference from other facts and circumstances, and not as a result of an inference that can be reached only by a process of reasoning.

2. ————: ————: Conclusions: Not Permitted to Build Inference upon Inference or Supply Elemental Facts Thereby. One is not permitted to build inference on inference, conclusion on conclusion, nor supply elemental facts by inference.

3. CARRIERS: Negligence: Question for the Jury Without Violating Rule of Inference upon Inference. In a suit to recover damages for death of an aged man who was thrown by the sudden movement of a street car while he was attempting to board the same,

the negligence of the defendant under the evidence, held a question for the jury without violating the rule of building inference upon inference.

4. **EVIDENCE: Jury not Required to Accept Defendant's Theory of Case.** Where defendant's evidence tends to show that deceased was injured in a manner inconsistent with the inference that the jury necessarily must have drawn to find for plaintiff, the jury was not required to believe defendant's evidence.

5. **DEATH: Direct Cause: Evidence Held to Show Death Due to Defendant's Negligence and not to Intervening Cause.** Where deceased suffered from a broken hip caused by being thrown by negligent movement of street car, and while confined to his bed by reason thereof became afflicted with bed sores, which became infected and he conveyed the infection from the sores by his hand to his face, causing facial erysipelas, *held*, that his death from facial erysipelas due to breaking of his hip as the direct result of his fall, and not to any intervening cause.

Appeal from the Circuit Court of Jackson County.—*Hon. Allen C. Southern*, Judge.

AFFIRMED.

*Francis M. Hayward* and *Charles H. Thompson* for respondent.

*R. J. Higgins* and *Mont T. Prewitt* for appellant.

BLAND, J.—This action, brought by the administrator of the estate of Phillip Boggess, deceased, is for damages for the wrongful killing by defendant of deceased. There was a verdict and judgment in favor of plaintiff in the sum of $2000 and defendant has appealed.

The facts show that deceased was a man nearly eighty-five years of age; that in the early afternoon of March 17, 1917, he was attempting to board a Roanoke street car of defendant, which had stopped at the usual stopping place at 9th and Main streets, in Kansas City, Missouri. The car was arranged so that passengers boarded it at the rear vestibule through folding doors and

steps on the outside, which were opened and closed simul-
taneously by a crank in the rear vestibule. This crank
was operated by the conductor. There was introduced
on behalf of plaintiff but one witness to the accident, a
news-boy, who testified that he was standing on the curb
about 45 or 50 feet from the place of the accident selling
papers when deceased came up to him and asked if a
Roanoke car stopped there. At that time the car in ques-
tion was approaching and the boy told deceased to "walk
over there." The boy continued to watch deceased. The
witness testified that deceased waited until the car stop-
ped, at that time deceased was at the rear entrance wait-
ing for the doors to open. When the doors were opened
and the step let down deceased hesitated before getting
on the car so as to be sure of his step. He then put one
foot upon the step and his hand upon the handrail which
ran vertically in the center of the rear vestibule next to
the step. At that time a man came up and touched the
witness on the right shoulder and asked him for a paper
and put two cents in his hand, and, to use the witness's
own language—.

"At the same minute a man on the other side of me
told me to look towards the rear end of the platform; and
this man that came up to me was lying on the pavement.
The car moved up six feet, and the door was closed. And
they picked the man up and carried him on the car and
the car went on."

Deceased was lying on the pavement "where the car
was before it moved up." For a very brief period a man
was between the witness and deceased but this did not
prevent the witness from seeing what occurred as de-
scribed above.

Defendant's testimony tended to show that the de-
ceased came running toward the car after it had started;
that when he reached it the doors were closed; the car
had proceeded 6 or 8 feet; deceased attempted to hang
on to a little knob attached to the body of the car on the
outside of the door; he was unable to get a secure hold

and fell to the pavement and the car stopped; he was not upon the steps at any time before the doors were closed and the car started.

The petition alleged that deceased had proceeded to the point of the regular stopping place of cars for the purpose of becoming a passenger on the car; that when the car stopped deceased, without delay, proceeded toward the same "put his foot upon the lower step of the back platform of said car and was in the act of putting his hand upon the handrail of said car, and his other foot upon the step of said car, when the conductor of defendant, in charge of said car, carelessly, negligently, suddenly and violently closed the door of said car and raised up to step to said platform of said car, and swept Phillip Boggess off said step, and caused said car to start, whereby plaintiff alleges that said Phillip Boggess was thrown off said step and upon the pavement." Plaintiff's instruction No. 1, after having the jury find the facts leading up to plaintiff's reaching the car, told the jury that if they further found that as deceased "put his foot on the lower step . . . and was in the act of putting his hand on the handrail of said car and his other foot upon the step, * * * the conductor of defendant, in charge of said car carelessly and negligently closed the door of such car and swept" deceased "off said step and caused the car to start and thereby threw" deceased "off said step and upon the pavement and broke his hip," and that deceased "died from the injuries so received," their verdict should be for the plaintiff.

Defendant's first contention is that its demurrer to the evidence should have been sustained for the reason that plaintiff's evidence fails to show any negligence on the part of the defendant and that the cause of the death so far as plaintiff's evidence is concerned is left to conjecture; that plaintiff introduced no witness who saw what occurred after deceased put his foot upon the step with the apparent intention of boarding the car; that the jury under the evidence could not infer facts not shown

by direct evidence to the effect that the step was folded up, that the doors were closed, that the conductor gave a signal for the car to proceed while deceased was in the act of boarding the car, and that deceased was thrown by the movement of the car. In this connection it is insisted that in order for the jury to infer all these things it must build inference upon inference, which is forbidden, and that, in view of the fact that there was evidence as to what actually occurred, the jury should not indulge in any presumptions or inferences necessary to piece out a case for plaintiff in order to find for him; that when ''facts come in at the door inference flies out at the window,'' citing Mockowik v. Railroad, 196 Mo. 550, 571, and other cases.

It is well settled that the existance of a ultimate fact may be proved either by direct or circumstantial evidence, but such fact must appear as a direct and reasonable inference from other facts and circumstances and not as a result of an inference that can be reached only by a process of reasoning from such other facts and circumstances. One is not permitted to build inference on inference, conclusion on conclusion nor to supply elemental or basic facts by inference. [Sexton v. Met., 245 Mo. 254, 275; Hamilton v. Railroad, 250 Mo. 714, 722; Dunlap v. Railroad, 145 Mo. App. 215, 222.]

While there is no direct evidence that deceased was thrown by the folding up of the step and the starting of the car, there was evidence that ''the same minute'' after deceased was seen in this position of attempting to board the car he was again seen lying on the ground and the car had moved forward about six feet. Plaintiff introduced direct evidence showing that the car had stopped; that deceased had put one foot upon the step and was in the act of putting his hand upon the handrail in an effort to board the car. There was further direct evidence given by defendant's witnesses that the conductor closed the doors and drew up the step before the car started and plaintiff's evidence shows that it did start; that it ran

six feet and that deceased was found on the pavement where he attempted to board the car, showing evidence of having received a violent fall. We think from this testimony the inference is irresistible that the doors were closed, the step drawn up and the car moved forward when deceased attempted to board the same, throwing him to the pavement. We think that this conclusion is reached without violating the rule of building inference upon inference. From the circumstances shown in the evidence there is but one inference to be drawn from the facts proved, and that is, that deceased was thrown by the starting of the car while he was in the act of boarding the same. It is not questioned that if this happened, defendant is liable.

The conclusion that deceased was injured in the manner alleged in the petition and submitted to the jury, is not based upon conjecture or speculation. [Dunlap v. Railroad, supra; Johnston v. Railroad, 150 Mo. App. 304; Daly v. Pryor, 197 Mo. App. 583.] It is true that defendant's evidence tends to show that deceased was injured in a manner inconsistent with the inference that the jury necessarily must have drawn in order to find for plaintiff. Defendant's theory of the evidence was submitted to the jury under instructions requested by it. These instructions were to the effect that if they found such theory to be true, their verdict should be for the defendant. The jury was not required to believe defendant's evidence. [Daly v. Pryor, supra, l. c. 587], and it is apparent that they did not do so.

We are not called upon to say what would have been the effect had defendant introduced evidence entirely consistent with that of plaintiff's evidence up to the point prior to the accident where plaintiff's evidence leaves off, showing that after the deceased placed his foot upon the step and was in the act of taking hold of the handrail he was seized with vertigo and fell in a faint, or that some one for whose act the defendant would not be responsible pushed or threw him to the pavement, or some other ac-

cident befell deceased unconnected with any negligence on the, part of defendant, for no such evidence was introduced on the part of defendant. There is a strong inference that the accident happened in the manner submitted by plaintiff and there is no evidence of any other possible cause of deceased's falling consistent with that of plaintiff's direct evidence so far as the latter went. The demurrer to the evidence was properly overruled and the court did not err in submitting the theory pleaded. From what we have said the court did not err in giving plaintiff's instruction No. 3.

It is insisted that plaintiff's instruction No. 1 did not require the jury to find that the death was the direct result of the accident; that the positive testimony shows that the direct cause of his death was facial erysipelas. The physician who attended deceased testified that deceased died about a month after his injury; that he suffered from a broken hip caused by the fall; that as a result of being confined to his bed he "suffered from bad bed sores." These sores were caused by "lying with his weight for a long time on his back;" that he was compelled to lie upon his back on account of the broken hip as result of his injury; that deceased had no control of his bowels; that it was impossible to keep him clean; that the bed sores became infected and that he conveyed the infection by his hands from the sores to his face, which resulted in facial erysipelas; that the erysipelas was the direct cause of his death, and that the death certificate made out by the physician stated that the direct cause of the death was facial erysipelas.

From this testimony it is insisted that the evidence shows that death was not due to the breaking of the hip caused by the fall but to an intervening cause, to-wit, facial erysipelas. We think there is no merit in this contention. The effect of the evidence of deceased's doctor, which is undisputed, is that the broken hip was the direct and proximate cause of the death. When the physician testified that erysipelas was the direct cause of the death

he may have been using the term "direct cause" in a medical sense and if so, the medical meaning is the same as the popular meaning. From his evidence it is apparent that in his mind the term "direct cause" meant the nearest cause. There is nothing in his evidence tending to show that he was using the words "direct cause" in a technical or legal sense. We, of course, take the words in that sense and we find that there is no question but that the injury was the direct and proximate cause of his death. [Kuenzel v. St. Louis, 278 Mo. 277; Jacobs v. K. C. Rys. Co., 127 S. W. 579; Thomas v. Railroad, 187 Mo. App. 420.]

The judgment is affirmed. All concur.